[No. F051226. Fifth Dist. Dec. 19, 2007.]

WESTAMERICA BANK, Plaintiff and Appellant, v.
MBG INDUSTRIES, INC., et al., Defendants and Respondents.

COUNSEL

The Law Firm of Powell & Pool and Don J. Pool for Plaintiff and Appellant.

Sagaser, Jones & Hahesy, Scott D. Laird and David W. Burnett for Defendants and Respondents.

OPINION

**HARRIS, Acting P. J.—**

## INTRODUCTION

Plaintiff and appellant Westamerica Bank filed an amended complaint against defendants and respondents Michelle Ross and MBG Industries, Inc., for breach of contract when respondents defaulted on a $300,000 line of credit.[1] Respondents filed a cross-complaint against appellant, alleged appellant refused to renew or extend the line of credit because of gender discrimination against Ms. Ross, and raised causes of action based on state and federal antidiscrimination laws. Respondents extended a pretrial offer to compromise pursuant to Code of Civil Procedure[2] section 998, only as to the allegations of appellant's amended complaint on the money owed on the defaulted note, and not on the gender discrimination issues raised by their cross-complaint. As we will explain, section 998 "is a cost-shifting statute which encourages the settlement of actions, by penalizing parties who fail to accept reasonable pretrial settlement offers. A plaintiff who refuses a reasonable pretrial settlement offer and subsequently fails to obtain a 'more favorable judgment' is penalized by a loss of prevailing party costs and an award of costs in the defendant's favor." (*Heritage Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439 [77 Cal.Rptr.2d 459].) An offer made by one party to "any other party to the action" must "allow judgment to be taken" in order to be valid under section 998. (§ 998, subd. (b).)

Appellant did not accept respondents' offer. The court subsequently granted appellant's motion for summary judgment on the cross-complaint. Thereafter, the parties entered into a stipulated judgment in appellant's favor on the

---

[1] We will refer to plaintiff and appellant Westamerica Bank as Westamerica or appellant. We will refer to defendants and respondents Michelle Ross and MBG Industries, Inc., as either respondents, Ms. Ross, or MBG.

[2] All further statutory citations are to the Code of Civil Procedure unless otherwise indicated.

amended complaint, but on terms not as favorable as the terms of respondents' previous offer to settle. The trial court found respondents' offer to settle only the amended complaint was valid to trigger the provisions of section 998, and granted respondents' motion for postoffer attorney fees and costs.

We are presented with the question of whether respondents' offer to settle only the amended complaint was valid under section 998, even though it would have left a pending cross-complaint between the identical parties unresolved, or whether it would have "allow[ed] judgment to be taken" against respondents on the amended complaint. (§ 998, subd. (b).) We will review the purposes behind the various statutory and legal principles raised in this case, and conclude that respondents' offer to settle only the amended complaint was valid to trigger the provisions of section 998, even though it would not have resulted in an appealable final judgment, because it was an offer to the other party in the separate and independent action of the amended complaint which would have allowed "judgment to be taken." (§ 998, subd. (b).)

## FACTS

In December 1994, Michael Ross formed and operated Pacific Control Company in Fresno, which provided commercial electrical contracting and installation of electrical controls. Michelle Ross, his wife, was an employee of the company and served as its office and business manager.

*The Promissory Notes and Credit Lines*

On June 11, 1997, Valliwide Bank (Valliwide) extended a line of credit to "Michael W. Ross dba Pacific Control Company." Mr. Ross executed a promissory note in the principal amount of $100,000 in favor of Valliwide. The note provided that Mr. Ross was to pay the loan on demand, or if no demand was made, in one payment of all outstanding principal plus accrued unpaid interest on June 30, 1998.

As part of the same transaction, and as collateral for the line of credit, Mr. Ross, doing business as Pacific Control Company, executed a commercial security agreement in Valliwide's favor, pledging the products, equipment, supplies, accounts receivable, and other collateral from Pacific Control Company. Valliwide perfected its security interest by filing a UCC-1 financing statement with the California Secretary of State's office.

The parties agree that appellant Westamerica Bank subsequently became Valliwide's successor in interest.

On July 22, 2003, Mr. Ross, doing business as Pacific Control Company, executed a change-in-terms agreement with appellant, which identified the amount of the loan as $300,000, due either on demand or on June 30, 2004, pursuant to specific terms and conditions. The change-in-terms agreement contained a clause on attorney fees and expenses, and identified Westamerica as "lender" and Mr. Ross as "borrower." "Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law."

In September 2003, Mr. Ross formed MBG Industries, Inc. (MBG), and he was the sole shareholder. Mr. Ross sold Pacific Control to MBG, MBG created a division called Pacific Control Company, and it carried on essentially the same business. According to respondents, Ms. Ross was an employee of MBG and "continued working closely with her husband."

On June 27, 2004, Mr. Ross died. Ms. Ross inherited and succeeded to his property, including but not limited to 100 percent of his shares in MBG Industries, Inc.

The parties agree that after Mr. Ross died, respondents approached appellant, acknowledged the line of credit obligation, and applied for a renewal or extension of the line of credit. On September 2, 2004, respondents filed a written application with appellant for credit. On September 14, 2004, appellant advised respondents it would not renew the note that had been due on June 30, 2004, that appellant was going to sue on the defaulted note, and that appellant was moving for an ex parte writ of attachment.

*Appellant's Amended Complaint*

On or about September 28, 2004, appellant filed a complaint in the Superior Court of Fresno County against respondents based on their default on the June 30, 2004 line of credit.

On October 21, 2004, appellant, as successor in interest to Valliwide, filed a first amended complaint against Ms. Ross and MBG Industries, Inc., doing business as Pacific Control Company, as successor in interest to Michael Ross, formerly doing business as Pacific Control Company. The amended complaint set forth the factual background, as set forth *ante*, as to the 1997 line of credit and the 2003 change-in-terms agreement with Mr. Ross, that Mr. Ross died in June 2004, and the $300,000 note was due on June 30, 2004.

Appellant's amended complaint alleged seven causes of action, all of which were based on respondents' default on the $300,000 line of credit. The first and second causes of action were for breach of contract and money lent, and alleged MBG failed to pay the amount due on June 30, 2004, and the unpaid balance plus interest was $306,999.72, plus accrued daily interest.

The third, fourth, and fifth causes of action were for claim and delivery, conversion, and conspiracy to convert, and alleged MBG unlawfully detained the collateral pledged as security, refused to return the collateral, and respondents conspired to hinder, delay, and defraud appellant from collecting the accounts and equipment pledged as collateral under the security agreement for the line of credit.

The sixth and seventh causes of action were against Ms. Ross, that a petition for probate of Mr. Ross's estate had not been filed, and Ms. Ross, as the decedent's spouse, was derivatively liable for breach of contract and Mr. Ross's debt under the promissory note.

Appellant's amended complaint prayed for damages of $306,999.72, representing the amount due on the line of credit, plus accruing interest; an order for immediate possession of the collateral pledged as security for the line of credit; the value of the property converted plus interest; damages for time and money expended in pursuit of the converted property; general, punitive and exemplary damages; and attorney fees and costs of suit.

*Respondents' Cross-complaint*

On November 17, 2004, United Security Bank issued a conditional commitment to respondents for a $300,000 revolving line of credit, pending an appraisal of business real property. On November 22, 2004, respondents notified appellant of United Security Bank's conditional loan commitment, and that respondents intended to use the $300,000 loan from United Security Bank to satisfy appellant's claims in the amended complaint.

On December 20, 2004, respondents filed an answer to the amended complaint and denied the allegations. On the same day, respondents filed a cross-complaint against appellant. Respondents alleged that after Mr. Ross's death, Ms. Ross and MBG applied for and sought an extension of the line of credit from appellant using the same and additional collateral as to the existing line of credit, appellant refused to extend the terms or the maturity date, refused to accept interest payments, and instead filed suit for breach of contract. Respondents alleged they were qualified for the credit for which they applied, and subsequently obtained a $300,000 line of credit from United Security Bank.

Respondents alleged appellant denied the extension request because of Ms. Ross's gender, that Ms. Ross was of equal credit stature as Mr. Ross, Mr. Ross repeatedly obtained extensions and increased his line of credit from 1997 to 2004, and Ms. Ross succeeded to all of Mr. Ross's interest in MBG and Pacific Control after his death, such that MBG became a "woman-owned corporation." "Despite their equal financial and credit worthy status, Michelle Ross and her Company, MBG Industries, Inc., were denied credit. Michael Ross, a male, was extended credit and treated more favorably than Michelle Ross, a female and MBG Industries, Inc., a female owned business in the application and credit consideration process by Westamerica Bank."

Respondents alleged Ms. Ross's subsequent receipt of the $300,000 line of credit from United Security Bank was "further evidence" of the "credit worthiness" of Ms. Ross and MBG. "Michelle Ross and MBG Industries, Inc. allege, on information and belief, that other males or married females of similar credit worthiness and credit stature were given loans or were treated more favorably by Westamerica Bank than were Michelle Ross and her Company, MBG Industries, Inc. in the credit application and consideration process."

Respondents' cross-complaint raised three causes of action against appellant, all of which alleged appellant denied Ms. Ross's request to extend the line of credit because of her "protected status as a female" and MBG's status as "a woman-owned business," there was no rational, economic or other business reason to justify the decision, and a male managing and controlling the same amount of earnings and assets would have received credit.

The first cause of action was for violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), and alleged appellant's conduct in denying credit to Ms. Ross and MBG was an act of discrimination which resulted in damages, attorney fees, and costs in excess of $300,000.[3] The second cause of action was for violation of Civil Code section 1812.30 et seq., and alleged appellant's conduct was intentional, discriminatory, fraudulent, malicious, and oppressive, to justify an award of punitive damages. The third cause of action was for violation of the federal Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq.), and also sought punitive damages. The cross-complaint prayed for economic, general, and punitive damages, attorney fees, and costs of suit.

---

[3] Respondents' claim for damages on the first cause of action for $300,000 was coincidentally the amount due on the defaulted note.

*The Offer to Compromise*

On or about January 6, 2005, United Security Bank issued a $300,000 line of credit to respondents, guaranteed by Valley Small Business Development Corporation.

On January 7, 2005, respondents presented appellant's counsel with a check for $306,999.72, "representing the full amount sought" and due on the June 30, 2004 note. Respondents requested appellant to provide a full accounting "of the remaining claimed amounts due on the Note."

On January 19, 2005, appellant filed an answer to respondents' cross-complaint and denied the allegations.

On or about January 20, 2005, appellant advised respondents that $25,162.54 was still due on the note, which included $14,340 in attorney fees and costs.

On January 21, 2005, respondents served appellant with an offer to compromise pursuant to section 998, which stated: "Defendants and Cross-Complainants Michelle Ross and MBG Industries, Inc. offer to have judgment taken against them *on Westamerica Bank's Complaint only*, pursuant to section 998 of the California Code of Civil Procedure for the total sum of Eleven Thousand One Dollars ($11,001.00), plus reasonable attorneys' fees and costs incurred by Westamerica Bank to date, if recoverable, to be determined by the Court." (Italics added.) Respondents requested acceptance of the offer prior to the beginning of trial or within 30 days, whichever occurred first, or it would be deemed withdrawn.

As we will discuss *post*, respondents stated that they made the section 998 offer "[b]ased on the accounting provided" as to the remaining amount due on the note, minus appellant's claim for attorney fees and costs. Respondents allege the section 998 offer allowed "judgment to be taken on the Complaint in the amount of $11,001.00, plus reasonable attorneys' fees and costs, if recoverable, as determined by the Court." Also according to respondents, they were willing to pay the claimed amount still due on the note, but "not inclined" to pay "what they believed were exorbitant and absolutely unnecessary attorneys' fees."

As we will discuss *post*, the parties agree that respondents' section 998 offer was only to settle all issues in appellant's amended complaint for the default on the line of credit, and the offer did not extend to the legal claims raised in respondents' cross-complaint. The parties also agree that appellant did not respond to respondents' offer and it lapsed.

*Resolution of Respondents' Cross-complaint*

On June 9, 2005, appellant filed a motion for judgment on the pleadings on the second cause of action in respondents' cross-complaint. On July 1, 2005, appellant filed a motion for summary judgment or adjudication of the first, second, and third causes of action in respondents' cross-complaint.

On August 11, 2005, the court granted appellant's motion for judgment on the pleadings as to the second cause of action in respondents' cross-complaint.

On October 17, 2005, the court granted appellant's motion for summary judgment on respondents' cross-complaint, and found no triable issues of material fact existed as to any of the three causes of action in the cross-complaint. As to the first and third causes of action, violations of the Unruh Civil Rights Act and the Equal Credit Opportunity Act, the court found MBG's financial status presented a nondiscriminatory reason for appellant's denial of the request to extend the line of credit. The court found that as of July 2004, the balance sheet which MBG submitted with its loan application to appellant showed it had "a negative shareholder equity in excess of $153,751.00 and a negative net profit of $164,773.53 for the first seven months of 2004." "MBG's net loss for 2003 was $31,966.00. The balance sheet also indicated a loan of $72,500.00 to MBG from either Michelle Ross or Michael Ross. In August or September 2004 MBG borrowed money from its shareholder to meet its ongoing business operations."

The court further found: "While MBG and Ms. Ross attempt to show that [appellant's] decision not to extend credit was a prohibited discriminatory practice, they offer little in the form of direct evidence." Appellant thus presented "creditable, and non-discriminatory, justification for denying MBG's credit application. MBG and Ms. Ross have not presented substantial evidence to refute [appellant's] evidence." As to the second cause of action, discriminatory denial of credit, the court found Ms. Ross never applied for, or was denied, credit in her own name, and the credit application clearly indicated the applicant was MBG.

On October 25, 2005, the court entered judgment on the cross-complaint in favor of appellant and against respondents, and deemed appellant the prevailing party on the cross-complaint. On November 4, 2005, the notice of entry of judgment on the cross-complaint was filed.

*Resolution of the Amended Complaint*

On January 19, 2006, the parties entered into a stipulation for entry of judgment on appellant's amended complaint. The parties stipulated that

judgment would be entered in the amended complaint, in favor of appellant and against respondents for $11,614.66, as of November 29, 2005, plus daily interest. The stipulated judgment included a provision for attorney fees and costs: "The Court will determine the prevailing party with respect to any attorney's fees and/or costs incurred by the parties hereto. Any memorandum of costs and/or motion for attorney's fees shall be made in accordance with California law."

The stipulated judgment stated that respondents had asserted "certain claims for abuse of process" against appellant "arising out of the Superior Court Action." Appellant denied those claims, and respondents "presently intend[] to pursue those claims in a separate action . . . ." The stipulation did not address any issues arising from the alleged abuse of process claim.

On January 20, 2006, a judgment pursuant to stipulation was filed in favor of appellant, and against respondents, jointly and severally, for $11,614.66, plus daily interest. It was further ordered that appellant was entitled to possession of MBG's personal property, consisting of all accounts, equipment, and proceeds. If appellant levied on the personal property, the net proceeds of MBG's personal property "shall be applied to satisfy the Judgment, with any excess remitted to the Judgment debtor." On January 27, 2006, the notice of entry of the judgment pursuant to stipulation was filed.

*Respondents' Motions for Costs and Attorney Fees*

As explained *ante*, on January 21, 2005, respondents served appellant with a section 998 offer to compromise on all issues in appellant's amended complaint for $11,001. At the time of the offer, both the amended complaint and the cross-complaint were still at issue. The parties agree that respondents' offer was not addressed to any issues arising from respondents' cross-complaint, and appellant did not respond to the offer. After the resolution of the amended complaint and cross-complaint, as set forth *ante*, the parties filed various motions for attorney fees and costs.

On February 21, 2006, respondents filed a motion to tax costs and alleged they were the prevailing party on the amended complaint pursuant to section 998 because appellant failed to accept a valid offer to compromise, appellant did not obtain a more favorable judgment, and appellant was not entitled to postoffer costs incurred on the amended complaint after January 21, 2005. Respondents set forth the procedural history of their failed attempts to extend the line of credit with appellant, that United Security Bank issued a line of credit for $300,000, and, on January 7, 2005, respondents used that loan to pay appellant $306,999.72 on the outstanding note. Respondents asserted that they requested an accounting from appellant as to the remaining amounts due

on the note, and appellant advised them that it was claiming $25,162.54 was due on the note, which included $14,340 in attorney fees and costs.

According to respondents, they were willing to pay the claimed amount on the note, but "not inclined" to pay "what they believed were exorbitant and absolutely unnecessary attorneys' fees." Respondents asserted that their section 998 offer to appellant on January 21, 2005, was "[b]ased on the accounting provided" as to the remaining amount due on the note, minus the claimed attorney fees and costs. Respondents alleged the section 998 offer allowed "judgment to be taken on the Complaint in the amount of $11,001.00, plus reasonable attorneys' fees and costs, if recoverable, as determined by the Court."

Respondents acknowledged the stipulated judgment on the amended complaint was for $11,614.66, plus daily interest. Respondents cited to the deposition testimony of Larry Larison of Westamerica, who stated that as of January 11, 2005, the principal amount due on the note was $10,822.54; and that as of January 21, 2005, the total amount due on the note was $10,856.36, excluding claimed fees and costs. "[The stipulated judgment] amount superficially exceeds the $11,001.00 offered in the [section] 998 Offer, but is merely reflective of the interest that accrued on the Note between January 21, 2005 and November 29, 2006. Simple math and the testimony of Mr. Larison establish that due to the [section] 998 Offer, [appellant] is not the prevailing party."

Based on these circumstances, respondents argued they were the prevailing party on the amended complaint because they submitted a valid section 998 offer to settle all issues raised in the amended complaint, the offer exceeded the actual amount owed on the note, appellant "inexplicably failed" to accept the offer, and the amount of the stipulated judgment did not exceed the offer.

Respondents acknowledged that appellant would argue the January 21, 2005 offer was not valid under section 998 because it only addressed the legal claims raised in appellant's amended complaint, and did not address any causes of action alleged in respondents' cross-complaint. However, respondents argued a section 998 offer could be made only on the amended complaint and still be valid, section 998 only required service of an offer that would allow "judgment" to be taken on an "action," a complaint was a separate action, and the one final judgment rule did not apply to section 998 offers.

On February 21, 2006, appellant filed a motion to strike respondents' memorandum of costs and argued appellant was the prevailing party on the

amended complaint with a net monetary recovery, as defined in section 1032, subdivision (b), and respondents failed to establish appellant's liability for costs and fees.

On February 22, 2006, respondents filed a motion for postoffer attorney fees and again argued they were the prevailing parties on the amended complaint pursuant to section 998 because of appellant's failure to accept the January 21, 2005 offer to compromise, and respondents could recover postoffer costs under section 998, and postoffer attorney fees under Civil Code section 1717 and the terms of the promissory note and the stipulated judgment.

Respondents argued the section 998 offer had to be evaluated based on the amount which was due on the note at the time of that offer: "[W]hether the Plaintiff has obtained a more favorable judgment is determined at the time of the offer, and damages incurred after the time of the offer do not allow the Plaintiff to avoid [section] 998's cost-shifting penalty. [Citation.] Judged against the amount owed on the Note at the time of the offer, $10,856.36, WestAmerica failed to obtain a more favorable judgment."

In addition, respondents argued they were entitled to postoffer attorney fees pursuant to both Code of Civil Procedure section 998 and Civil Code section 1717, because attorney fees are considered costs under Code of Civil Procedure sections 998 and 1033.5, "and the cost-shifting penalty applies to post-offer attorneys' fees." Respondents claimed attorney fees of $60,626.00.

On March 3, 2006, appellant filed opposition to respondents' motion to tax costs. Appellant argued section 998 contemplated a settlement offer which would result in one final judgment, respondents' offer was limited to the amended complaint and excluded the cross-complaint, and acceptance of that offer would not have resulted in a final judgment to resolve the entire lawsuit between the parties.

On March 16, 2006, appellant filed a motion to fix attorney fees as costs pursuant to Civil Code section 1717. Appellant noted the stipulated judgment on the amended complaint provided that the court would determine the prevailing party for purposes of attorney fees and costs, and appellant was the prevailing party on both the amended complaint and the cross-complaint. In addition, the July 2003 change-of-terms agreement and the security agreement, upon which appellant sued, provided for an award of attorney fees if respondents did not pay the underlying indebtedness. Appellant claimed attorney fees of $41,542.

*The Court's Tentative Ruling*

On March 15, 2006, the trial court issued a tentative ruling on the competing motions to tax costs, and noted the issue was whether respondents' section 998 offer was valid even though it only addressed the amended complaint and did not resolve the entirety of the action. The court held appellant's reliance on the "one final judgment rule" was incorrect and appellant erroneously relied on cases that addressed the appealability of final judgments, as opposed to the application of a section 998 offer.

" 'A final judgment is not necessarily the last one in an action. A judgment that is conclusive of any question in a case is final as to that question. The Code provides for an appeal from a final judgment, not from *the* final judgment in an action.' (*Sharon v. Sharon* (1885) 67 Cal. 185, 196 [7 P. 456].) Code of Civil Procedure section [940.1] states an appeal may be had '[f]rom a judgment,' it does not refer to *the* final judgment in an action.

"Here the resolution of [appellant's] contract claims against [respondents] was not dependent upon a resolution of [respondents'] counter-claims for discrimination. The cases cited by [appellant] are therefore distinguishable. (*People ex rel. Department of Public Works v. Clausen* (1967) 248 Cal.App.2d 770, 787 [57 Cal.Rptr. 227].)" (Original italics.) The court held respondents' offer was valid under section 998, and appellant's rejection of that offer "precludes it from recovering its post-offer costs."

The court also determined appellant "did not obtain a more favorable judgment" and was not entitled to its postoffer costs. The court explained that respondents' section 998 offer included recovery of appellant's costs and attorney fees, "upon determination by the court, as well as payment of $11,001. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 269 [14 Cal.Rptr.3d 184].) [Respondents] have established that at the time of the offer, January 21, 2005, [appellant] was claiming the amount then due, including interest was $10,856.36." The court noted that when a section 998 offer includes costs, it is compared with the judgment, including preoffer costs and attorney fees. In this case, those costs and fees "were to be later determined by the court."

The court also granted respondents' claim for postoffer attorney fees, and noted the prevailing party was entitled to attorney fees under the terms of the note. Respondents had established that appellant "did not obtain a more favorable judgment after rejecting [respondents'] offer," which entitled respondents to their postoffer costs, including attorney fees under Civil Code section 1717. The court limited those fees to reasonable attorney fees incurred solely as a result of defending appellant's contractual causes of

action, and not those fees incurred in prosecuting the "separate and distinct causes of action" in respondents' cross-complaint.

The court ordered certain costs and attorney fees claimed by respondent stricken because they were not allowable or reasonably related to the contractual cause of action. The court awarded $54,738.75 to respondents as reasonable attorney fees incurred after appellant rejected the section 998 offer.

On April 12, 2006, appellant filed further briefing, challenged the correctness of the court's tentative ruling, and argued the actual judgment was more favorable than respondents' offer because the judgment on the amended complaint was for money and possession of respondents' personal property. "Thus, [appellant] was entitled to actual possession of the equipment listed in the Judgment, as opposed to a simple money judgment. Thus, [appellant] obtained a 'more favorable judgment' than that offered by [respondents], and [appellant] was the 'prevailing party' for purposes of" sections 998 and 1032.

*The Court's Hearing*

On April 26, 2006, the court conducted a hearing on the validity of the section 998 offer and the parties restated their positions. Appellant argued respondents' offer would not have resolved the entire litigation between the parties and was not valid under section 998. Appellant asserted the court's tentative ruling, which found the offer valid under section 998, stated a position never taken by any court on this issue. Appellant insisted that a section 998 offer must resolve all aspects of the litigation between the parties in order to be consistent with the legislative purpose of resolving lawsuits. Respondents countered the amended complaint was a separate action, their offer would have completely resolved the amended complaint, and the offer was valid under section 998. The court took the matter under submission.

*The Court's Order*

On May 25, 2006, the court issued its order and found respondents made a valid offer under section 998 "to resolve [appellant's] lawsuit against them," even though it would not have settled the pending cross-complaint. "[Appellant's] rejection of that offer, and its failure to obtain a more favorable judgment in its favor, precludes it from recovering its post-offer attorney fees and costs, related to the litigation of [appellant's] complaint. [Appellant's] rejection of that offer, and its failure to obtain a more favorable judgment, entitles [respondents] to the recovery of their post-offer attorney fees and costs related to litigation of [appellant's] complaint."

The court awarded $14,688.50 to appellant as its reasonable preoffer attorney fees, and $753 as allowable preoffer costs. The court noted that at

the hearing, respondents conceded they had previously claimed costs that were not related to appellant's amended complaint and the court disallowed those claims. The court awarded $62,268.25 to respondents as reasonable postoffer attorney fees, and $1,191.50 as postoffer costs.

Thereafter, appellant filed a motion for new trial and argued the court's ruling was contrary to the facts and law. Respondents filed opposition. On August 9, 2006, the court denied appellant's motion for new trial without comment. On August 23, 2006, the court filed the order denying the new trial motion. On September 7, 2006, the notice of entry of order was filed.

On September 8, 2006, appellant filed a timely notice of appeal of the court's orders of May 25, August 9, and August 23, 2006.

*Issues on Appeal*

The instant appeal essentially presents one issue: whether the trial court properly found that respondents' offer to compromise of January 21, 2005, was a valid offer under section 998 to support the court's award of postoffer attorney fees and costs to respondents, or whether appellant correctly asserts the offer was not valid under section 998 because it only addressed the allegations in the amended complaint, it did not resolve the pending cross-complaint, and it would have violated the one final judgment rule. Appellant raises this issue in the context of its new trial motion, and contends the court should have granted the new trial motion based on its erroneous legal determination of the prevailing party.

The contested appellate issue is easily phrased but difficult to answer, and has not been directly addressed by a published case. We must thus "proceed step by step" (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1108 [86 Cal.Rptr.2d 614, 979 P.2d 974]) through various provisions of the Code of Civil Procedure, and examine the nature of complaints, cross-complaints, prevailing parties, attorney fees and costs, and judgments.

## DISCUSSION

### I.

### ATTORNEY FEES, COSTS, AND SECTION 998

We begin with basic legal principles underlying awards of attorney fees and costs in civil litigation. "The 'costs' of a civil action consist of the expenses of litigation, usually excluding attorney fees. Under the common law rule, parties to litigation must bear their own costs. The right to recover

any of such costs is determined entirely by statute. 'It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party.' [Citations.]" (*Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436, 439 [71 Cal.Rptr.2d 452, 950 P.2d 567]; see *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 597 [3 Cal.Rptr.3d 593] (*Baker-Hoey*).)

". . . This general rule is subject to numerous exceptions, including those found in . . . section 1032, subdivision (b), which provides that unless otherwise statutorily prohibited, the prevailing party is entitled to recover 'costs.' The primary statutory provision with respect to the types of expenses that may or may not be included in a cost award under . . . section 1032 is found in section 1033.5 of that code." (*Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1622 [28 Cal.Rptr.2d 878]; see *Baker-Hoey, supra,* 111 Cal.App.4th at p. 597.) " ' "Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.' " (*Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1128 [96 Cal.Rptr.2d 112], italics omitted.) "When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not . . . ." (§ 1032, subd. (a)(4).) However, "section 1032 does not purport to define the term 'prevailing party' for all purposes." (*Galan,* at p. 1128.)

The costs allowed under section 1032 do not include the attorney fees which the prevailing party has incurred in the litigation. (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 923 [65 Cal.Rptr.3d 242].) Section 1033.5 provides that attorney fees are allowable as costs under section 1032 when authorized by contract, statute, or law, including Civil Code section 1717. (§ 1033.5, subds. (a)(10)(A)–(C), (c)(5).)

When authorized by contract, the right to attorney fees is made reciprocal by Civil Code section 1717, which states: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).)

As applicable to the instant case, the parties entered into two agreements that contained attorney fees clauses. The July 2003 change-in-terms agreement, in which appellant extended a $300,000 line of credit to Mr. Ross,

provided for the borrower to pay the lender's attorney fees and costs if the lender hired someone to enforce the obligation. Appellant filed the amended complaint against respondents to recover the amount owed under the change-in-terms agreement given respondents' default. The parties subsequently entered into a stipulated judgment, which resolved the amended complaint in appellant's favor, and also provided for the court to determine "the prevailing party with respect to any attorney's fees and/or costs incurred by the parties hereto."

As explained *ante*, the trial court granted appellant's motion for summary judgment as to all claims in respondents' cross-complaint. Thereafter, the parties entered into the stipulated judgment in favor of appellant and against respondents for $11,614.66. It was further ordered that appellant was entitled to possession of MBG's personal property, consisting of all accounts, equipment, and proceeds. If appellant levied on the personal property, the net proceeds of MBG's personal property would "be applied to satisfy the Judgment, with any excess remitted to the Judgment debtor." It would thus seem that appellant would be the prevailing party as to both its amended complaint and respondents' cross-complaint, and would be entitled to attorney fees and costs pursuant to sections 1032 and 1033.5, the attorney fees clauses in the change-in-terms agreement and stipulated judgment, and Civil Code section 1717.

However, section 1032 provides that the prevailing party is "entitled to all of his costs *unless another statute provides otherwise.* [Citation.] Absent such statutory authority, the court has no discretion to deny costs to the prevailing party. [Citation.]" (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 129 [84 Cal.Rptr.2d 753], italics added; see *Baker-Hoey, supra,* 111 Cal.App.4th at p. 597.)

Section 998, the statute at issue in this case, states that the costs allowed under section 1032 "shall be withheld or augmented as provided in this section." (§ 998, subd. (a).) "Not less than 10 days prior to commencement of trial or arbitration . . . of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action *to allow judgment to be taken* or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. . . . [¶] (1) If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . . [¶] (2) If the offer is not accepted prior to trial . . . or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence . . . ." (§ 998, subd. (b), italics added.)

Section 998, subdivision (c)(1) states: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

Thus, while the general rule provides for the prevailing party in a civil lawsuit to recover its costs (§ 1032), "section 998 establishes a procedure for shifting the costs upon a party's refusal to settle. If the party who prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own postoffer costs and, moreover, must pay its opponent's postoffer costs, including, potentially, expert witness costs. (§ 998, subd. (c)(1).)" (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 798 [101 Cal.Rptr.2d 167] (*Barella*); see *Scott Co. v. Blount, Inc., supra*, 20 Cal.4th at p. 1112.)

■ "Section 998 has been part of California law since 1851 [citation], and although it has undergone some modification over the years, it remains essentially unchanged in substance." (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 585 [11 Cal.Rptr.2d 820] (*Taing*).) As such, section 998 provides that any party to an action may "serve an offer in writing upon any other party to the action *to allow judgment to be taken* or an award to be entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b), italics added.) "If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly." (§ 998, subd. (b)(1).) An offer is deemed withdrawn if it is not accepted before trial, or within 30 days after it is made. (§ 998, subd. (b)(2).) If a defense offer is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer, which may include expert witness fees. (§ 998, subd. (c)(1).)

Once a section 998 offer has been made, it remains open until it is unequivocally rejected, formally revoked, or lapses due to passage of time. (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 731 [15 Cal.Rptr.3d 829] (*Berg*).) A section 998 offer is not revoked by a counteroffer, and it still may be accepted by the offeree during the statutory period unless the offer has been revoked by the offeror. (*Berg, supra*, 120 Cal.App.4th at p. 731.) "If the offeree is uncertain about some aspect of the offer . . . , he is free to explore those matters with the offeror, or even to make counterproposals during the

period in which the statutory offer remains outstanding. By doing so, he will not run the risk of having the original offer revoked and may still accept that offer on the terms extended." (*Id.* at pp. 730–731.)

■ "As recognized in numerous Court of Appeal decisions, the clear purpose of section 998 . . . is to encourage the settlement of lawsuits prior to trial." (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338].) "Section 998 achieves its aim by punishing a party who fails to accept a *reasonable* offer from the other party. [Citations.]" (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699 [241 Cal.Rptr. 108], original italics; see *Taing, supra*, 9 Cal.App.4th at p. 583.) "In that situation, the prevailing party is precluded from recovering its own postoffer costs and must pay its opponent's postoffer costs, including expert witness fees, if awarded in the court's discretion. [Citation.] The purpose of the cost-shifting statute is to encourage the settlement of litigation without trial, by punishing the party who fails to accept a reasonable settlement offer from its opponent. [Citation.]" (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268 [14 Cal.Rptr.3d 184] (*Elite Show Services*).) "Fundamental rules of statutory construction require that, in construing section 998, we attempt to ' "ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" ' [Citation.] That purpose is clear: Section 998 is intended 'to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)' [Citation.]" (*Berg, supra*, 120 Cal.App.4th at pp. 726–727.)

In interpreting a section 998 offer, general contract principles apply when they neither conflict with nor defeat the statute's purpose of encouraging the settlement of lawsuits prior to trial. (*Elite Show Services, supra*, 119 Cal.App.4th at p. 268.) "[T]he legislative purpose of section 998 is generally better served by 'bright line rules' that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement. [Citations.]" (*Barella, supra*, 84 Cal.App.4th at p. 799.)

The courts have uniformly rejected an interpretation of section 998 that would allow offering parties to " 'game the system.' " (*Menees v. Andrews* (2004) 122 Cal.App.4th 1540, 1544 [19 Cal.Rptr.3d 664].) A section 998 offer must be made in good faith and be " 'realistically reasonable under the circumstances of the particular case,' " and carry with it some reasonable prospect of acceptance. (*Arno v. Helinet Corp.* (2005) 130 Cal.App.4th 1019,

1024 [30 Cal.Rptr.3d 669] (*Arno*); see *Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 471 [33 Cal.Rptr.3d 713].) The reasonableness of the offer depends upon the information available to the parties as of the date the offer was served. (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 547–548 [135 Cal.Rptr.2d 404] (*Burch*); *Arno, supra*, 130 Cal.App.4th at p. 1025.)

Section 998 "does not require a plaintiff to make a global settlement offer to all defendants in an action, or to make an offer that resolves all aspects of a case. [Citation.]" (*Arno, supra*, 130 Cal.App.4th at p. 1026.) "When multiple defendants have jointly made a settlement offer to a single plaintiff without indicating how the offer is to be allocated among them, it has been held too uncertain to result in section 998 penalties, because it cannot be determined whether any individual plaintiff's recovery at trial was more favorable than the offer. [Citations.]" (*Ibid.*) Similarly, "a section 998 offer made to multiple parties is valid only if it is expressly apportioned among them and not conditioned on acceptance by all of them. [Citations.] A single, lump sum offer to multiple plaintiffs which requires them to agree to apportionment among themselves is not valid. [Citation.] Likewise, a lump sum offer by a plaintiff to multiple defendants may be invalid for the same reasons. [Citation.]" (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 112 [30 Cal.Rptr.2d 486].) " 'To be effective, an offer to multiple parties under section 998 must be explicitly apportioned among the parties to whom the offer is made so that each offeree may accept or reject the offer individually.' [Citation.]" (*Burch, supra*, 109 Cal.App.4th at p. 544; see *Menees v. Andrews, supra*, 122 Cal.App.4th at p. 1544.)

The issue of whether a section 998 offer is enforceable, and the application of section 998 to an undisputed set of facts, presents questions of law, which we review de novo. (*Barella, supra*, 84 Cal.App.4th at p. 797; *Elite Show Services, supra*, 119 Cal.App.4th at p. 268.) Appellant raises this issue in the context of the trial court's denial of its motion for new trial. A trial court has broad discretion in ruling on a new trial motion and the exercise of the discretion is accorded great deference on review. (*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 645 [13 Cal.Rptr.3d 315].) When the ground for a new trial motion is an error of law under section 657, subdivision 7, the superior court has "no discretion to grant a new trial unless its original ruling, as a matter of law, was erroneous." (*Ramirez v. USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391, 397 [285 Cal.Rptr. 757].) The court's denial of such a motion presents a question of law on appeal. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859–860 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ Even if a party extends a valid section 998 offer, the cost-shifting provisions are triggered only if the party who prevailed at trial obtained a

judgment *less favorable* than a pretrial settlement offer submitted by the other party. The parties herein are not challenging the trial court's finding that appellant did not receive a more favorable judgment than offered by respondents. It is undisputed that on January 21, 2005, respondents extended a pretrial offer to appellant for judgment to be taken against them on the amended complaint for $11,001 plus reasonable attorney fees and costs, that offer only addressed appellant's amended complaint, and it did not cover any aspects of respondents' pending cross-complaint. It is also undisputed appellant did not respond to the offer. Respondents subsequently took nothing from their cross-complaint, and the parties entered into a stipulated judgment in appellant's favor for $11,614.66, with the court to determine the prevailing party for purposes of attorney fees and costs.

The trial court herein found appellant did not receive a more favorable recovery than the offer to compromise, because respondents' January 21, 2005 offer to compromise included recovery of appellant's attorney fees and costs, upon the determination of the court, whereas the stipulated judgment provided for the court to determine the prevailing party for purposes of attorney fees and costs. While the stipulated judgment provided for appellant to receive both a money judgment and possession of MBG's personal property, it also stated that if appellant levied on the personal property, the net proceeds of MBG's personal property would "be applied to satisfy the Judgment, with any excess remitted to the Judgment debtor." When a section 998 offer "contains only a monetary offer but the relief recovered is both monetary and nonmonetary, the trial court must also consider the offer in light of the totality of the recovery." (*Arias v. Katella Townhouse Homeowners Assn., Inc.* (2005) 127 Cal.App.4th 847, 856 [26 Cal.Rptr.3d 113].) The stipulated judgment provided for appellant to levy on MBG's personal property only to the extent required to satisfy the money judgment, and not in addition to that amount. Appellant has not challenged the court's finding that it did not obtain a more favorable recovery than the offer to compromise, and that finding is supported by the entirety of the record. (See, e.g., *Stallman v. Bell* (1991) 235 Cal.App.3d 740, 747–751 [286 Cal.Rptr. 755]; *Heritage Engineering Construction, Inc. v. City of Industry, supra,* 65 Cal.App.4th at pp. 1439–1442.)

While appellant did not obtain a more favorable recovery than the compromise offer, the provisions of section 998 are triggered only if a party made a valid offer to compromise under that statute. We must thus review the provisions of section 998 and the requirements for a valid offer to compromise which trigger the statute's cost-shifting penalties.

## II.

## "JUDGMENT TO BE TAKEN"

With this background in mind, we turn to the disputed question of whether respondents' offer to only settle the amended complaint was an offer in an *"action to allow judgment to be taken* or an award to be entered in accordance with the terms and conditions stated at that time," even though the offer did not extend to the pending cross-complaint between the same parties. (§ 998, subd. (b), italics added.)

Appellant asserts respondents' offer to settle only the amended complaint was not valid under section 998 because it violated the "one final judgment" rule. The "one final judgment" rule provides that an appeal may be taken from a final judgment, but not an interlocutory judgment. (§ 904.1, subd. (a)(1); *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 740–741 [29 Cal.Rptr.2d 804, 872 P.2d 143].) "The rule was designed to prevent piecemeal dispositions and costly multiple appeals which burden the court and impede the judicial process. [Citation.]" (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1293 [91 Cal.Rptr.2d 60].)

A complaint and cross-complaint are treated as independent actions for most purposes, except with respect to the requirement of one final judgment. (*Rethers v. Rethers* (1956) 140 Cal.App.2d 28, 30 [294 P.2d 968].) "Where a complaint and cross-complaint involving the same parties have been filed, there is no final, appealable judgment *until both have been resolved.* [Citation.]" (*ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 122 Cal.App.4th 994, 1002 [19 Cal.Rptr.3d 340], italics added.) "Judgment rendered on a complaint alone, unaccompanied by judgment on a pending cross-complaint, is not a final judgment, and appeal from it may be dismissed on motion. [Citations.]" (*Tsarnas v. Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629]; see *Holt v. Booth* (1991) 1 Cal.App.4th 1074, 1081 [2 Cal.Rptr.2d 727]; *Swain v. California Casualty Ins. Co.* (2002) 99 Cal.App.4th 1, 6 [120 Cal.Rptr.2d 808].)

Thus, a judgment which resolves a complaint but does not resolve a cross-complaint pending between the same parties, is not final and not appealable, even if the complaint has been fully adjudicated. (*Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 [86 Cal.Rptr.2d 657]; *Southern Pacific Land Co. v. Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 825–826 [233 Cal.Rptr. 794].) Similarly, a judgment is not final and not appealable when it decides the issues in a cross-complaint but not the issues in a complaint, unless the cross-complaint sought separate and independent relief by or against different parties, or the judgment or order on the cross-complaint leaves no issues to be determined as to one party. (See *First*

*Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468, 473 [119 Cal.Rptr.2d 787]; *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437 [129 Cal.Rptr.2d 436]; *Nicholson v. Henderson* (1944) 25 Cal.2d 375, 378–381 [153 P.2d 945]; *Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 118 [199 P.2d 668]; *Evans v. Dabney* (1951) 37 Cal.2d 758, 760 [235 P.2d 604]; *Fleuret v. Hale Constr. Co.* (1970) 12 Cal.App.3d 227, 230 [90 Cal.Rptr. 557].)

▪ Appellant's attempt to apply the one final judgment rule to section 998 offers is inappropriate given the distinctively different purposes behind the statutory schemes of the one final judgment rule of section 904.1, subdivision (a)(1), and offers to compromise under section 998. The theory behind the one final judgment rule " 'is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' [Citations.]" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43].) In contrast, the purpose of section 998, "the cost-shifting statute," is to encourage "the settlement of litigation without trial, by punishing the party who fails to accept a reasonable settlement offer from its opponent. [Citation.]" (*Elite Show Services, supra*, 119 Cal.App.4th at p. 268; see *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 449–450 [78 Cal.Rptr.2d 913]; *Berg, supra*, 120 Cal.App.4th at pp. 726–727.)

We believe section 998 can be interpreted in a way to harmonize these two statutory schemes, and turn to the specific language of section 998 to resolve this issue. As noted *ante*, section 998, subdivision (b) states, in pertinent part: "Not less than 10 days prior to commencement of trial or arbitration . . . of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party *to the action to allow judgment to be taken* or an award to be entered in accordance with the terms and conditions stated at that time. . . ." (Italics added.)

The disputed issue in this case is whether respondents' offer of January 21, 2005, to have judgment taken against them solely on the complaint for $11,001, and leave the cross-complaint unresolved, was valid under section 998, in that it was an offer to the "other party to the *action to allow judgment to be taken*." (§ 998, subd. (b), italics added.)

The well-settled definitions of the key words in this phrase supply the answer to this question. "A judgment is the *final determination of the rights of the parties* in an *action* or proceeding." (§ 577, italics added.) "An *action* is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22, italics added.) "A civil action is prosecuted by one party against another for

the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (§ 30.)

■ "Civil action" does not have a different meaning from "civil suit." (*People v. Yartz* (2005) 37 Cal.4th 529, 538 [36 Cal.Rptr.3d 328, 123 P.3d 604].) "The common understanding of an 'action to enforce' is that it is a proceeding initiated by the filing of a claim. Thus, an action not only encompasses the complaint 'but refers to *the entire judicial proceeding* at least through judgment and is generally considered synonymous with "suit." ' [Citations.]" (*Salawy v. Ocean Towers Housing Corp.* (2004) 121 Cal.App.4th 664, 672 [17 Cal.Rptr.3d 427], italics added.)

■ "A complaint and a cross-complaint are, for most purposes, treated as *independent actions*." (*Security Pacific National Bank v. Adamo* (1983) 142 Cal.App.3d 492, 496 [191 Cal.Rptr. 134] (*Security Pacific*), italics added; see *Coachella Valley Mosquito and Vector Control Dist. v. City of Indio* (2002) 101 Cal.App.4th 12, 16 [123 Cal.Rptr.2d 551]; *K.R.L. Partnership v. Superior Court* (2004) 120 Cal.App.4th 490, 503 [15 Cal.Rptr.3d 517].) A cross-complaint is generally considered to be a separate action from that initiated by the complaint. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 51–52 [118 Cal.Rptr. 184, 529 P.2d 608]; *Ohio Casualty Ins. Group v. Superior Court* (1994) 30 Cal.App.4th 444, 448–449 [35 Cal.Rptr.2d 771].) A cross-complaint is a separate pleading and represents a separate cause of action from that which may be stated in the complaint, and must be complete and sufficient by itself without aid of the averments of the answer. (*Asamen v. Thompson* (1942) 55 Cal.App.2d 661, 674 [131 P.2d 841]; *Wilson, McCall & Daoro v. American Qualified Plans, Inc.* (1999) 70 Cal.App.4th 1030, 1036 [83 Cal.Rptr.2d 192].)

"Where there are both a complaint and a cross-complaint there are actually two separate actions pending and the issues joined on the cross-complaint are completely severable from the issues under the original complaint and answer. [Citations.]" (*Security Pacific, supra*, 142 Cal.App.3d at p. 496.) " 'Where a cross-complaint is filed there are two simultaneous actions pending between the parties wherein each is at the same time both a plaintiff and a defendant.' [Citation.]" (*K.R.L. Partnership v. Superior Court, supra*, 120 Cal.App.4th at p. 503; see *Case v. Kadota Fig Assn.* (1950) 35 Cal.2d 596, 603 [220 P.2d 912].)

■ In determining the intent of the Legislature, the courts have "found the purposes of section 998 best served by enforcement of statutory offers which, despite the absence of the statutory language proposing to 'allow judgment to be taken,' make it clear that settlement will result *in a final disposition of the litigation*. [Citations.]" (*Berg, supra*, 120 Cal.App.4th at p. 729, italics added.) "The word 'judgment' in . . . section 998 indicates that

the statute contemplates that an offer to compromise which is accepted will result in *the final disposition of the underlying lawsuit . . . .*" (*Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899, 906 [32 Cal.Rptr.2d 740], italics added.) "The entry of judgment pursuant to section 998 is merely a ministerial act which may be performed by the clerk of the court." (*Saba v. Crater* (1998) 62 Cal.App.4th 150, 153 [72 Cal.Rptr.2d 401].) Under section 998, "the clerk or judge merely enters judgment following the filing of a written acceptance of the offer." (*Saba v. Crater, supra,* at p. 153; see § 998, subd. (b)(1).)

In the instant case, if appellant had accepted respondents' offer to settle only the amended complaint, the cross-complaint would not have been resolved, there would not have been a final judgment for purposes of section 904.1, subdivision (a)(1), and appellant could not have filed a notice of appeal at that point. However, the clerk of the court would have had the ministerial duty to enter judgment on the amended complaint in favor of appellant (§ 998, subd. (b)(1)), a judgment would have been "taken" against a "party" to the separate and independent "action" of the amended complaint, and all the issues between the parties on the amended complaint would have been resolved, as required to trigger the provisions of section 998.

Indeed, such a situation actually occurred in this case after appellant declined to accept respondents' offer to settle the amended complaint. The trial court subsequently granted appellant's motion for summary judgment on the cross-complaint, the court entered judgment on the cross-complaint in favor of appellant and against respondents, and a notice of entry of judgment on the cross-complaint was filed. At that point, there was no final judgment as required by section 904.1, subdivision (a)(1), and neither party could have filed a notice of appeal of any issues arising from resolution of the cross-complaint. However, a judgment was entered in the separate and independent action of the cross-complaint, leaving the amended complaint unresolved.

We thus conclude that based on the language of section 998 and the settled definitions of the key words in that statute, respondents' offer to settle only the amended complaint was valid to trigger the provisions of section 998 because acceptance of that offer by the "other party to the action" would have allowed "judgment to be taken." (§ 998, subd. (b).) In reaching this conclusion, we acknowledge that a "final judgment" for purposes of section 904.1, subdivision (a)(1) would not have existed and it would not have been appealable. However, our interpretation of section 998, subdivision (b) is consistent with the legislative intent of the statute to encourage settlement of litigation without trial (*Elite Show Services, supra,* 119 Cal.App.4th at p. 268; *Meister v. Regents of University of California, supra,* 67 Cal.App.4th at pp. 449–450) while avoiding " 'multiple appeals in a single action' " (*Griset v. Fair Political Practices Com., supra,* 25 Cal.4th at p. 697).

## DISPOSITION

The judgment is affirmed. Costs on appeal to respondents.

Wiseman, J., and Gomes, J., concurred.