Filed 10/5/21  Dell v. Parmar CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| STEWART DELL, Individually and as Successor, etc., et al., | E073851 |
| Plaintiffs and Appellants, | (Super.Ct.No. CIVDS1504642) |
| v. | OPINION |
| VIKRAM S. PARMAR et al., | |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Affirmed.

WLA Legal Services and Steven Zelig for Plaintiffs and Appellants.

LaFollette Johnson DeHaas Fesler & Ames, Michael J. Doubet and Grigory

Rchtouni for Defendant and Respondent Mazin Munir.

Cole Pedroza, Kenneth R. Pedroza, Michael A. Carlin; Walker and Mann, Jeffrey

A. Walker and Jeffrey K. Keyes for Defendants and Respondents St. Mary High Desert

Medical Group and Vikram S. Parmar.

1

Plaintiffs and appellants Stewart Dell, Individually and as Successor in Interest, etc. et al., (Plaintiffs) appeal the order entered by the superior court awarding defendants and respondents Dr. Mazin Munir, Dr. Vikram Parmar and St. Mary High Desert Medical Group (High Desert) (collectively, Defendants) expert witness fees after they were successful at trial pursuant to Code of Civil Procedure section 998.[1]

Perry Dell (Dell) was 83 years old when he presented to High Desert complaining that he did not feel well. Dell was diagnosed with pneumonia. He had several preexisting conditions including COPD, diabetes and congestive heart failure. He also complained of back pain and that he had been having trouble walking. Dr. Munir was his treating physician at High Desert. An MRI was taken of his back, and Dr. Parmar, a surgeon employed by High Desert, recommended that he have back surgery. After the surgery, Dell began to deteriorate and was eventually transferred to a convalescent facility where he died.

Plaintiffs sued Defendants and several other doctors contending that Dell should not have had back surgery based on his medical condition at the time, his age, and on the morning of the surgery he did not want to go through with the surgery. After two years of exchanging discovery and several demurrers, Defendants submitted an offer of compromise to Plaintiffs pursuant to section 998 offering to forego their costs to date and malicious prosecution. Plaintiffs never responded to the section 998 offers. The matter went to a jury trial and Defendants prevailed. The trial court awarded Defendants their

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

costs for expert witnesses pursuant to section 998 finding the offers to compromise were made in good faith.

Plaintiffs contend on appeal that the trial court erred by awarding Defendants their expert witness fees because the section 998 offer was made too early in the litigation, making it unreasonable as a matter of law.

**FACTUAL AND PROCEDURAL HISTORY**

A.    SUMMARY OF FACTS[2]

According to the allegations in the Fifth Amended Complaint (5AC) and Dell's medical records, Dell was 83 years old on November 1, 2013, and felt under the weather, so he went to High Desert.  He was admitted and diagnosed with shortness of breath. Dell had several preexisting conditions, including COPD, diabetes, and congestive heart failure.  Dr. Munir became Dell's attending doctor.  Dell was diagnosed with pneumonia and it was noted that he was mildly cognitively impaired.  Dr. Munir referred Dell to an orthopedic consultant because Dell was complaining of mild neck pain.  He also was having difficulty walking, which had worsened in the prior six months.  Dell was seen by Dr. Parmar.  An MRI of Dell's spine was performed, and abnormalities were detected. Dr. Parmar recommended surgery, which was scheduled for November 7, 2013.  Dell gave his consent.  Plaintiffs insisted that on the morning of the surgery, Dell had

---

[2] This case went to jury trial, but Plaintiffs have not made the trial part of the record on appeal.  Plaintiffs have only provided parts of the record, including the 5AC and the records relating to the memorandum of costs filed by Defendants and their response.  Deposition transcripts have not been included with the record.  Defendant provided over 1,500 pages of Dell's medical records, which are mostly irrelevant to the issues on appeal.

withdrawn his consent but the surgery was nonetheless performed by Dr. Parmar. Dell's surgery lasted for three hours. After the surgery, Dell suffered a Vancomycin-Resistant Enterocci (VRE) infection. He had vocal paralysis. He had postoperative respiratory distress and was admitted to ICU. Dell was discharged to hospice care when he advised doctors he did not want further aggressive measures taken. He died on December 7, 2013.

On November 6, 2013, Dell gave his written consent to the spine surgery. A nurse noted on November 7, 2013, that Dell did not want to go to surgery because he was hungry. Dell was taken to surgery.

B.     FILIINGS PRIOR TO THE SECTION 998 MOTIONS TO COMPROMISE

On August 15, 2014, Plaintiffs filed their original complaint for compensatory, treble and punitive damages (complaint) against Defendants and several other persons and entities.[3] Plaintiffs alleged 15 causes of action, including against Defendants, negligence, breach of fiduciary duty, fraud in the inducement, negligent misrepresentation, fraud pursuant to Penal Code sections 484 and 496, and elder abuse. Stewart Dell submitted his declaration. He was Dell's biological son. Dell died on December 7, 2013. His cause of death was listed as Chronic Obstructive Pulmonary Disease (COPD).

---

[3] Dr. Munir was not named in the original complaint.

A demurrer to the first complaint was granted on August 17, 2015, as to nine of the causes of action. A second amended complaint was filed on October 2, 2015 and a demurrer was granted on December 7, 2015 as to several of the causes of action. The only remaining claims after the demurrer to the second amended complaint against Dr. Parmar were for negligence, breach of relationship of trust, and elder abuse.

Included with the demurrer was evidence that had been obtained in discovery. Dell's daughter, Catherine Heaton, was deposed on December 18, 2015. She acknowledged that Dell had told the nurses on the morning of his surgery that he did not want to go to surgery.

Another family member, Victoria Lynn Modeste, was deposed on February 14, 2017. She was with Dell that morning and was aware that Dell was scheduled for spine surgery. She was asked if Dell had any concern about going in for spine surgery. She stated, "Yes, but . . . he seemed resigned to it. And this had been a problem he had had for over a year. And so it seemed like the only solution that anyone—any doctor that we saw came up with." She never heard Dell tell anyone he did not want to go into the surgery; he was resigned to the fact he needed it. She thought he may not have wanted the surgery because it was delayed that day and he was hungry and thirsty. He wanted the surgery to resolve his dizziness. She was present when Dell was taken in to surgery.

Plaintiffs responded to special interrogatories in January 2015 and December 2015. Defendants filed a notice of lodging of original deposition transcripts for trial on March 18, 2019. In that notice, it showed that Modeste's deposition was completed February 14, 2017; Dr. Parmar's deposition was taken on September 26, 2016; and

5

several other treating doctors were completed between October 2016 and September 2018.

###### C.      SECTION 998 OFFERS

On February 3, 2017, Defendants submitted section 998 offers to all Plaintiffs. The offers to compromise were for a waiver of costs and waiver of a cause of action for malicious prosecution in exchange for dismissal with prejudice; a general release in favor of Dr. Parmar and Dr. Munir; and the parties were to bear their own costs and attorney fees. Plaintiffs did not respond to the offers and they expired by rule of law on March 10, 2017.

###### D.      JURY TRIAL AFTER THE SECTION 998 OFFERS

On February 22, 2018, Plaintiffs filed their 105-page 5AC and named Defendants and several other persons and entities. They alleged numerous causes of action against Defendants and other persons and entities. Plaintiffs alleged against Defendants causes of action of negligence and breach of duty of relationship of trust and confidence. They alleged against High Desert and Dr. Parmar, elder abuse and battery.

On March 23, 2018, Dr. Parmar's motion for summary adjudication on the 5AC was denied. On April 12, 2019, the "court order[ed] elder abuse cause of action claim out" and "breach of fiduciary obligation is out," as against Dr. Parmar. Trial proceeded only on battery and medical negligence against Dr. Parmar  and against Dr. Munir for medical negligence.

The matter went to a jury trial commencing on March 18, 2019. The jury entered a special verdict on April 16, 2019. It reached the decision that Doctors Munir and

Parmar were not negligent in their treatment of Dell. Twelve of the jurors found that Dr. Munir was not negligent. For Dr. Parmar, 10 of the 12 jurors reached the decision that he was not negligent. All 12 jurors found that Dr. Parmar did not commit a medical battery on Dell. Plaintiffs would take nothing after trial. The judgment was signed by the trial court on May 6, 2019.

E.     MEMORANDUM OF COSTS

Dr. Munir filed a memorandum of costs on June 4, 2019. The total amount requested was $69,353.46. He requested expert witness fees in the amount of $42,816.25. Dr. Parmar filed a memorandum of costs on June 6, 2019. Dr. Parmar requested $128,060 in expert witness fees pursuant to the section 998 offer. The total amount requested by Dr. Parmar was $163,088.90.

Plaintiffs filed a motion to tax costs submitted by Dr. Munir. Plaintiffs sought to strike the $42,816 expert witness fees. Plaintiffs argued the section 998 offer by Dr. Munir was not reasonable and did not satisfy the good faith requirement. Plaintiffs' counsel filed a declaration opining that the section 998 offer was not made in good faith; when it was served, Plaintiffs had only taken a few depositions and it was too early in the case.

Plaintiffs also filed a motion to tax costs submitted by Dr. Parmar. Plaintiffs argued that the expert witness fees should be stricken because the section 998 offer was not reasonable. Plaintiffs insisted that the section 998 offer was not made in good faith. The medical malpractice and elder abuse claims would have resulted in an award of hundreds of thousands of dollars. The offer of a waiver of costs was not reasonable.

7

Further, the offer was made early in the case. In addition, the award of expert witness fees, even if the section 998 offer was reasonable, was still discretionary.

Dr. Munir filed opposition to Plaintiffs' motion to tax costs. Dr. Munir contended that since he served Plaintiffs with section 998 offers to compromise, which were not accepted and expired as a matter of law, he was entitled to expert witness fees. The offers to compromise were made in good faith. Dr. Munir alleged that the matter was initiated on August 15, 2014. Two years after the initiation of the lawsuit, after several critical depositions were taken, Dr. Munir made his offer to compromise for a waiver of costs (which at the time totaled $4,500) and malicious prosecution. Dr. Munir, at the time of the offer, believed the matter was completely defensible. Further, an unanimous defense verdict was entered by the jury. Plaintiffs' motion to tax costs should be rejected. Dr. Munir contended, "Here, because Dr. Munir obtained a defense verdict, his 998 offers in exchange for waiver of costs and malicious prosecution were a reasonable prediction of the ultimate outcome and are prima facie evidence his offers were reasonable."

Further, at the time of section 998 offers, Plaintiffs were aware of the information that was possessed by Dr. Munir. Both sides had access to the treating physicians' records and critical depositions had been completed. Plaintiffs never complained about the section 998 offers and let them expire as a matter of law. Dr. Munir also pointed out that the case that went to trial was only on a wrongful death claim against Dr. Munir, not an elder abuse claim. Plaintiffs dismissed several other physician codefendants prior to trial for waivers of costs.

Attached to the opposition to the motion to tax costs was counsel's declaration. It noted that the depositions of Catherine Heaton and Stewart Dell were taken in September and December 2015. Dr. Munir's deposition was taken on October 21, 2016. Counsel further set forth the dates that discovery was provided. Also attached was the original trial setting for July 24, 2017. Dr. Munir's section 998 offers were also attached, advising Plaintiffs that he had incurred $4,500 in costs up to date.

Dr. Parmar also filed an opposition to the motion to tax costs. Dr. Parmar noted the verdict on the negligence cause of action was 10-2, and the medical battery was 12-0. Plaintiffs never responded to the offers to compromise. The section 998 offers were made on February 3, 2017, and Dr. Parmar believed at the time that the lawsuit was completely defensible based on the medical records and depositions. Further, it was up to Plaintiffs to show that the section 998 offers were unreasonable. Reasonableness should be measured against the jury verdict. In this case, the jury found in favor of Dr. Parmar which was prima facie evidence that the offers were reasonable.

Dr. Parmar further argued that at the time of the offer, Plaintiffs already had a chance to review the medical records and the defense experts concluded that the treatment provided by Dr. Parmar did not cause Dell's death. The offers were made on February 3, 2017, and the matter was set for trial on July 24, 2017. Plaintiffs had ample opportunity to review the evidence. Plaintiffs had already taken the depositions of Dr. Palmar, Dr. Munir and other doctors who treated Dell at High Desert. Stewart Dell and Catherine Heaton had been deposed. Dr. Parmar was entitled to all expert fees incurred after February 3, 2017.

F.  RULING ON THE MOTION TO TAX COSTS

The motion to tax costs was heard on August 8, 2019.  The trial court first addressed the argument pursuant to section 998.  The trial court stated, "I think under the particular facts of this case the offers—I cannot say that they were unreasonable." Plaintiffs argued that by allowing costs in this case it would give an incentive to defendants to make section 998 offers to compromise early in the case in order to get their expert witness fees.  Plaintiffs insisted that an offer to forego $4,500 in costs was unreasonable based on the facts of the case.  Dr. Munir's counsel argued that the section 998 offers were made two years after the case was initiated.  Dr. Munir also noted that Plaintiffs had dismissed three other codefendant physicians for waivers of costs and malicious prosecution just prior to trial.  By their own actions, the offers were reasonable. Dr. Parmar argued that the section 998 offers were made at the same time other codefendants were entering into settlement agreements.

The trial court adopted its tentative ruling and determined that Dr. Munir, High Desert and Dr. Parmar were entitled to the their expert witness fees.  Dr. Munir was granted $45,513.93.  Dr. Parmar was granted $132,903.90 in costs.  Entry of Judgment was made on August 23, 2019.

**DISCUSSION**

Plaintiffs contend the trial court erred by awarding Defendants their expert witness fees because the section 998 offer was made too early in the litigation making it unreasonable as a matter of law.

10

"We begin with basic legal principles underlying awards of attorney fees and costs in civil litigation. 'The "costs" of a civil action consist of the expenses of litigation, usually excluding attorney fees. Under the common law rule, parties to litigation must bear their own costs. The right to recover any of such costs is determined entirely by statute. "It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an authorizing statute, no costs can be recovered by either party." ' " (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 125-126.) One such statute is section 998. "[S]ection 998 'is a cost-shifting statute which encourages the settlement of actions, by penalizing parties who fail to accept reasonable pretrial settlement offers. A plaintiff who refuses a reasonable pretrial settlement offer and subsequently fails to obtain a "more favorable judgment" is penalized by a loss of prevailing party costs and an award of costs in the defendant's favor.' " (*Westamerica,* at p. 113.)

Section 998, subdivision (b) provides, "Not less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. Any acceptance of the offer, whether made on the document containing the offer or on a separate document of acceptance, shall be in writing and shall be signed by counsel for the accepting party or, if not represented by counsel, by the

11

accepting party." Subdivision (b)(2) provides, "If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration." Subdivision (c)(1) of section 998 provides, "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

"A 998 offer is valid only if it is made in 'good faith.' [Citations.] A 998 offer is made in good faith only if the offer is ' "realistically reasonable under the circumstances of the particular case" ' " (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924 (*Licudine*).) "Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances 'at the time of the offer' and 'not by virtue of hindsight.' [Citations.] First, was the 998 offer within the 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known? [Citation.] Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the

12

'offer [was] a reasonable one,' such that the offeree had a 'fair opportunity to intelligently evaluate the offer'?" (*Id.* at pp. 924-925.)

"The pertinent cases have . . . identified a number of specific circumstances to be examined. [¶] First, how far into the litigation was the 998 offer made? . . . [¶] Second, what information bearing on the reasonableness of the 998 offer was available prior to the offer's expiration? Information may be obtained . . . through prelitigation exchanges between the parties . . .; through postcomplaint discovery in the case . . .; [¶] [and] [t]hird, did the party receiving the 998 offer alert the offeror that it lacked sufficient information to evaluate the offer and, if so, how did the offeror respond?" (*Licudine*, *supra*, 30 Cal.App.5th at pp. 925-926.)

" 'Where the defendant obtains a judgment more favorable than its offer, " 'the judgment constitutes prima facie evidence showing the offer was reasonable.' " ' " (*Najah v. Scottsdale Ins. Co.* (2014) 230 Cal.App.4th 125, 143-144 (*Najah*).) " '[W]hether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court.' " (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 117; see also *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262 (*Jones*).)

In considering the *Licudine* factors in this case, first, the offer to compromise was made two years after the initiation of the lawsuit by Plaintiffs. Plaintiffs had already filed a second amended complaint and there had been numerous depositions already taken at the time of the offer. The trial date had been set. While Plaintiffs insist that as a matter of law the offer was made too early to be reasonable, they provide no case law to support

13

such a claim. It is clear that the offer is viewed in light of all the circumstances at the time and not solely upon the timing of the offer. (*Licudine*, *supra*, 30 Cal.App.4th at pp. 925-926.)

Second, Plaintiffs had access to information that could help them determine and evaluate the reasonableness of the offers to compromise. Plaintiffs had access to numerous depositions that had been taken. Dr. Munir's deposition was completed on October 21, 2016. Dr. Parmar's deposition was completed on September 26, 2016. Depositions from other treating physicians were completed on October 27, 2016, and February 13, 2017. Heaton and Stewart had their depositions taken in September 2015. Modeste's deposition was completed on February 14, 2017. Modeste stated that Dell was aware of the spinal surgery and consented. This court has not been given the transcript of the jury trial or the depositions so we cannot assume that the information Plaintiffs had at the time of the offer could only show that they would prevail. We must conclude the trial court, which was present for trial, was in the best position to determine that Defendants' offers to compromise were reasonable.

This is supported by the fact that Plaintiffs were unsuccessful and were awarded nothing after the jury trial, which is prima facie evidence that the offer to pay their own costs and not file a malicious prosecution action was reasonable. (*Najah v. Scottsdale Ins. Co.*, *supra*, 230 Cal.App.4th at pp. 143-144.)

Finally, Plaintiffs never responded to the section 998 offers. Plaintiffs never indicated they did not have enough information to evaluate the reasonableness of the

offer. All three factors in *Licudine* support the trial court's finding of reasonableness in this case.

Plaintiffs argue that this court must resolve the "split of authorities" between *Pineda v. Los Angeles Turf Club* (1980) 112 Cal.App.3d 53 (*Pineda*) and *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 (*Wear*), and the case of *Jones*, *supra*, 63 Cal.App.4th 1258.

In *Pineda*, plaintiff brought a wrongful death action seeking $10 million against a racetrack and manufacturer of racing helmets for the death of a jockey at the starting gate. Defendants prevailed at trial. The trial court found that defendants were not to be awarded expert witness fees as their offer to compromise the case for $2,500 was unreasonable. (*Id.* at p. 56, 62-63.) The appellate court concluded, "Under the circumstances of this case the trial court had ample reason to find that the offer was not reasonable. Although [defendant]'s liability was tenuous indeed, having in mind the enormous exposure the trial court could find that [defendant] had no expectation that its offer would be accepted. From this it follows that the sole purpose of the offer was to make [defendant] eligible for the recovery of large expert witness fees at no real risk." (*Pineda*, *supra*, 112 Cal.App.3d at p. 63.)

However, in *Pineda*, the court considered only one factor in determining the reasonableness of the offer. The court never considered that defendants eventually prevailed, and nothing was owed to Plaintiffs. The better practice is the evaluation adopted by other cases such as *Santantonio v. Westinghouse Broadcasting Co.*, *supra*, 25 Cal.App.4th 102. In that case, the appellate court concluded the defendant's $100,000

15

offer was not unreasonable or unrealistic, even though the plaintiff claimed $900,000 in damages. (*Id.* at pp. 117-118.) The court reasoned that the "[d]efendants contended that they had no liability to [the] plaintiff at all, and the jury ultimately agreed." (*Id.* at p. 118; see also *Najah v. Scottsdale Ins. Co.*, *supra*, 230 Cal.App.4th at p. 145 ["[A]lthough potential damages were extensive, given the reasonable possibility that liability did not exist, the trial court did not abuse its discretion in determining that [the defendant's] offer was reasonable"]) Further, as noted, the court in *Licudine* considered numerous factors relevant in assessing whether an offer to compromise is reasonable. *Pineda*'s focus on just one factor is not persuasive authority.

In *Wear*, *supra*,121 Cal.App.3d 818, a passenger in an automobile accident filed suit against both drivers. One of the drivers served the passenger with an offer to compromise in the amount of $1.00, which was rejected. The driver was successful in the litigation, and the trial court granted her costs based on the offer to compromise. (*Id.* at pp 819-820.) On appeal, the *Wear* court noted, "We believe that in order to accomplish the legislative purpose of encouraging settlement of litigation without trial [citation], a good faith requirement must be read into section 998. In other words, the pretrial offer of settlement required under section 998 must be realistically reasonable under the circumstances of the particular case. Normally, therefore, a token or nominal offer will not satisfy this good faith requirement, particularly where, as here, there is no cross-complaint." (*Id.* at p. 821.) Relying on *Pineda*, the appellate court concluded the $1.00 offer to compromise in the case was not reasonable as it was a token offer that

16

would not be accepted. The award of expert witness fees was reversed. (*Wear*, at pp. 821-822.)

Initially, the offer in this case was not nominal. The litigation had been ongoing for two years and the costs were in the thousands of dollars. It is unclear how much money Plaintiffs were seeking to obtain from Defendants as it was not provided in the 5AC and there were numerous other defendants. However, that was just one important factor in determining reasonableness. Here, the trial court did not abuse its discretion by concluding that the offer was reasonable especially in light of the jury finding of no liability.

Finally, in *Jones*, *supra*, 63 Cal.App.4th at p. 1262, plaintiffs sued an anesthesiologist for battery and sexual battery after surgery. Defendant served plaintiffs an offer to compromise pursuant to section 998 for a waiver of costs. (*Id.* at pp. 1261-1262.) Plaintiffs rejected the offer and proceeded to trial after defendant's motion for summary judgment was denied. A unanimous jury found in favor of defendant and the trial court awarded defendant $5,440 in expert witness fees. (*Id.* at p. 1261.)

The appellate court upheld the award on appeal. The *Jones* court noted, "appellants have failed to establish that the absence of a net monetary sum as part of a pretrial statutory settlement offer constitutes a per se violation of the good faith requirement. To the contrary, case law interpreting the good faith requirement allows for great flexibility in customizing pretrial settlement offers." (*Jones,* at p. 1264.) The *Jones* court concluded the offer made by defendant was in good faith, as "We find no abuse here in the trial court's making a discretionary award of expert witness fees. Facially,

17

respondent's offer carried a significant value to appellants because, if accepted, it would have eliminated appellants' exposure to the very costs which are the subject of this appeal, a sum appellants can hardly claim now to be de minimis. We are not obliged to ignore the reality that respondent prevailed at trial. In fact, the trial result itself constitutes prima facie evidence that the offer was reasonable, and the burden of proving an abuse of discretion is on appellants, as offerees, to prove otherwise." (*Ibid*.)

The instant case is most akin to *Jones*. As in *Jones*, the amount of costs incurred by Dr. Munir and Dr. Parmar prior to the offer to compromise were significant, and Plaintiffs ultimately now owe almost $200,000 in costs. Additionally, Defendants prevailed at trial. Further, we note that in *Jones*, the Plaintiffs also chose not to include the jury trial transcripts. The court commented, "Appellants have failed to overcome the presumption of reasonableness by references to the record. Considering that the determination of the good faith and reasonableness of a section 998 compromise offer is left to the sound discretion of the trial court [citation], appellants' failure to designate the reporter's transcript of the trial as part of the record on appeal leaves this court with no evidence upon which to base a finding that the trial court abused its discretion in determining that respondent's section 998 offer was reasonable. Given this omission, and unlike the trial judge, we are unable to evaluate independently the strength of appellants' case on the merits. Therefore, on this record, it would be speculative to make that assessment ourselves, or to reject the trial court's judgment." (*Jones*, *supra*, 63 Cal.App.4th at p. 1264.) Further, the plaintiffs never responded and said they lacked information to respond. Similarly, we do not have the trial transcripts or the deposition

transcripts of Drs. Munir and Parmar.  We cannot overturn the trial court's decision finding the reasonableness of the section 998 offer.  We uphold the trial court's ruling awarding expert witness fees to Defendants.

**DISPOSITION**

We affirm the award of costs to Defendants.  As the prevailing parties, Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

RAMIREZ

P. J.

CODRINGTON

J.

19