Filed 12/2/25  P. v. Setton Pistachio of Terra Bella CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE ex rel. SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SETTON PISTACHIO OF TERRA BELLA, INC.,<br><br>    Defendant and Respondent. | F088471<br><br>(Super. Ct. No. PCU298746)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Glade F. Roper, Judge.  (Retired Judge of the Tulare Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Shute, Mihaly & Weinberger, Matthew D. Zinn, Matthew S. McKerley, Shasta M. Fields, Chloe S. Lew; Annette A. Ballatore and Isela G. Welz for Plaintiff and Appellant.

Jennifer Bacon Henning for California State Association of Counties and South Coast Air Quality Management District as Amici Curiae on behalf of Plaintiff and Appellant.

Wanger Jones Helsley, John P. Kinsey, Nicolas R. Cardella, and Danika E. Jones for Defendant and Respondent.

-ooOoo-

Appellant the People ex rel. San Joaquin Valley Unified Air Pollution Control District (District) brought an enforcement action on behalf of the People against respondent Setton Pistachio of Terra Bella, Inc. (Setton) alleging Setton created a public nuisance and failed to obtain permits. Setton cross-complained, alleging constitutional defects and violations of due process in District's enforcement action.

District retained Shute, Mihaly & Weinberger LLP (SMW) to defend Setton's cross-claims. SMW concurrently represents an environmental justice group called Terra Bella Voice for Change (TBVC) in proceedings adverse to Setton arising out of the public nuisance at issue here.

The trial court, relying on *People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740 (*Clancy*) and *County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35 (*Santa Clara*), which ensures government attorney neutrality in public nuisance actions, granted Setton's motion to disqualify SMW from representing District. District appealed from that ruling.

The issue before us is whether a private law firm, retained by a government agency to defend a cross-complaint filed against that agency in a public nuisance action, should be disqualified when that private law firm concurrently represents a party in separate actions against the cross-complainant involving the same nuisance allegations.[1]

---

[1] Setton requests us to take judicial notice of SMW's fee motion documents in an unrelated matter before the Fresno Superior Court, a Tentative Rescission of Cease and Desist Order dated February 19, 2025, and California Rural Legal Assistance, Inc.'s comments regarding the Tentative Rescission Order dated March 20, 2025. Setton also requests this court take judicial notice of certain contract activity reports and proposals from South Coast Air Quality Management District, which Setton requested two months later. We deny both of Setton's requests. A "reviewing court" (Evid. Code, § 459, subd. (a)) "shall" take judicial notice of some matters as set forth under Evidence Code sections

We conclude that, on these facts, the heightened duty of neutrality applies.  The trial court did not err when it disqualified SMW.

## BACKGROUND

Setton is a pistachio processing facility located in Terra Bella, California.  In 2017, Setton constructed a reservoir (Storage Pond) to help manage water supplies by capturing wastewater and stormwater runoff from its facility and the community.  In 2018, the Storage Pond went septic.  Terra Bella residents thereafter formed an environmental justice group, TBVC, for the purpose of stopping the noxious odors emanating from Setton's Storage Pond and advocating for residents' right to live in a healthy community.

In October 2018, District started receiving complaints from TBVC about the noxious odors coming from the Storage Pond.  TBVC submitted their odor complaints to District and demanded immediate correction alleging the odors impacted the well-being of the community.  TBVC also collected signatures from approximately 450 residents in the community and asked state and local agencies for help.

On June 27, 2019, District issued Setton a notice of violation alleging the Storage Pond odor constituted a public nuisance in violation of District rule 4102.[2]

---

451 and 453, and "may" take judicial notice of other matters as described in Evidence Code section 452.  However, the matter to be judicially noticed in either circumstance must be relevant to a material issue in the case.  (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257; *People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6 [" 'Because . . . no evidence is admissible except relevant evidence, it is reasonable to hold that judicial notice, which is a substitute for formal proof of a matter by evidence, cannot be taken of any matter that is irrelevant' "].)  The documents Setton seeks judicial notice of are not relevant to the material issue in this case and thus, both requests are denied.  Even were we to take judicial notice of the requested documents, the outcome of this case would be no different.

[2] District rule 4102 states:  "A person shall not discharge from any source whatsoever such quantities of air contaminants or other materials which cause injury, detriment, nuisance or annoyance to any considerable number of persons or to the public or which endanger the comfort, repose, health or safety of any such person or the public or which cause or have a natural tendency to cause injury or damage to business or

3.

On September 20, 2019, while District was investigating the odor from the Storage Pond, Setton submitted an "Authority to Construct" application to District to allow for a plant expansion that included the installation of a new pistachio receiving, hulling, storage, and silo fumigation operation, and a facility-wide fumigation limit. This was the first of several Authority to Construct applications Setton submitted to District which sought to expand the company. From 2020 through 2022, District did not issue the Authority to Construct permits Setton applied for.

On August 13, 2020, the California Regional Water Quality Control Board, Central Valley Region (Water Board) issued Setton a "Cease and Desist Order" requiring Setton to immediately eliminate objectionable odors coming from the Storage Pond. The Cease and Desist Order also required Setton to submit a pond compliance plan that was to be implemented immediately upon any detection of odors that violated specifications set by the Water Board. The Water Board designated TBVC a party to those proceedings and listed SMW as counsel.

Also, on August 13, 2020, District informed Setton that its application was incomplete and required written confirmation from the Water Board that Setton had resolved the Storage Pond's odor issues. Later that month, District inspected Setton's facility and determined construction and installation of new pistachio receiving, hulling, storage, and fumigation operations had occurred. As a result, District issued Setton a notice of violation of District rule 2010.[3]

---

property." (<https://ww2.valleyair.org/rules-and-planning/current-district-rules-and-regulations/regulation-iv-prohibitions/> [as of Dec. 2, 2025], archived at: <https://perma.cc/CJJ8-KG3Z>.)

[3] District rule 2010 sets forth in pertinent part, "any person constructing, altering, replacing or operating any source operation which emits, may emit, or may reduce emissions [is required] to obtain an Authority to Construct or a Permit to Operate." (<https://ww2.valleyair.org/rules-and-planning/current-district-rules-and-regulations/regulation-ii-permits/> [as of Dec. 2, 2025], archived at: <https://perma.cc/4HPF-ZHJ5>.)

California Rural Legal Assistance, Inc. (CRLA), a nonprofit law firm, published a press release on September 15, 2020. The press release stated that TBVC pressured agencies responsible for enforcing Setton's permits, including District, the County of Tulare, and the Water Board to "take formal enforcement action against the facility." It further stated that TBVC's "ongoing advocacy" resulted in a cease and desist order and TBVC's "pressure" resulted in "ongoing protections for the community against the odor."

On September 18, 2020, TBVC, represented by CRLA, filed a writ petition challenging the County of Tulare's misuse of the California Environmental Quality Act (CEQA). (*Terra Bella Voice for Change v. County of Tulare et al.* (Super. Ct. Tulare County, No. VCU284345.) The petition alleged the County of Tulare approved expansion of Setton's facility without the mandatory permits authorizing construction from District, in violation of CEQA. Setton was named a real party of interest in the CEQA action.

Since 2020, SMW began representing TBVC.[4] On December 1, 2023, the parties agreed to a stipulated judgment in the CEQA action. (Case No. VCU284345.) The trial court retains jurisdiction over enforcement.

Although Setton drained the Storage Pond and discontinued use by November 2020,[5] District continued to receive complaints from TBVC regarding the odor coming from the Storage Pond which allegedly created a public nuisance.

On July 15, 2021, Setton and District eventually agreed to terms set forth in a "**STIPULATION ORDER OF ABATEMENT**" (the Order), pursuant to Health and Safety Code section 42451. The Order required Setton to comply with District rules 2010 (Permits Required) and 4102 (Nuisance), and to prevent Setton from operating its

---

[4] CRLA has received donations from SMW to fund its services since 2015.

[5] The record reflects two different dates that the Storage Pond was drained: May 13, 2020, and November 23, 2020.

pistachio receiving, hulling, storage, and fumigation equipment unless the conditions prescribed in the Order were met.

Thereafter, District received other Authority to Construct applications from Setton, but did not issue the permits because District determined Setton was still not in compliance with District rules even after the Order was executed. In December 2022, District issued Setton certain Authority to Construct permits.

On December 4, 2023, District, represented by in-house counsel, filed a public nuisance action for civil penalties against Setton. The enforcement action brought on behalf of the People, alleged Setton violated District regulations, which created a public nuisance and failed to obtain permits before commencing certain pistachio processing activities and construction.

On January 22, 2024, Setton filed a cross-complaint. Setton alleged District's investigation into whether its operations were generating offensive odors, its enforcement activities, and its failure to issue permits denied Setton due process.

District sought outside counsel to defend Setton's cross-complaint. Two firms were considered, SMW and Halpern, May, Ybarra, Gelberg, LLP.

On February 23, 2024, upon learning District approved the retention of SMW in closed session[6] for purposes of defending Setton's cross-complaint, Setton objected to District's retention of SMW. It argued SMW had a conflict of interest based on its concurrent representation of TBVC and SMW's involvement in other proceedings adverse to Setton regarding the same public nuisance.

On March 21, 2024, District approved retention of SMW in open session to defend District against Setton's cross-complaint.

---

[6] District initially approved of SMW's representation in closed session in violation of the Brown Act. (Gov. Code, § 54956.9.)

On April 12, 2024, SMW filed, on behalf of District, a demurrer and anti-SLAPP[7] motion to strike the cross-complaint.

On May 17, 2024, counsel for Setton filed a motion to disqualify SMW from representing District pursuant to *Clancy* and *Santa Clara* because of SMW's concurrent pro bono representation of TBVC, including its involvement in the Water Board proceedings, the CEQA action, and donations to CRLA.

On May 29, 2024, SMW filed, on behalf of District, an opposition to Setton's motion. District contended: (1) SMW was not acting in a prosecutorial role and was only hired to defend Setton's cross-complaint; (2) SMW had no pecuniary interest in the outcome of the litigation; and (3) Setton improperly delayed bringing the motion.

On June 11, 2024, the trial court held a hearing regarding Setton's motion to disqualify SMW. Counsel for District[8] argued the duty of neutrality only applies to the prosecution of criminal and abatement actions and does not apply to attorneys representing District. District's counsel further contended that the original complaint and cross-complaint involved separate issues.

Counsel for Setton argued SMW had a conflict of interest that should preclude them from representing District because of their representation of TBVC and personal interest in CRLA. Setton maintained that the factual underpinnings of both the complaint and cross-complaint are the same, and thus SMW will not be able to "maintain fidelity" to the clients SMW represented in the CEQA action and CRLA proceedings, who will be the same witnesses in the instant case.

---

[7] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' [Citation.]" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.)

[8] An attorney at SMW appeared on behalf of District at the motion to disqualify hearing.

On June 14, 2024, the trial court disqualified SMW from representing District. The court's reasoning is as follows:

"SMW's attorney acknowledged at the hearing of the motion that there is no case directly on point. All the cases cited involved contingency fee arrangements with attorneys retained to prosecute cases on behalf of a government. In those cases the court balanced the likelihood that the retained attorneys would be rendered unable to fairly represent the government because of their desire for pecuniary gain with the need for the government to have effective representation. That is not an issue here. This case involves a different conflict, that being that SMW has a legal duty to advance the interests of its client TBVC. It cannot set aside its duty to protect TBVC's interests. It therefore cannot possibly represent District in an 'absolutely neutral', unbiased manner.

"District argued that here SMW is not 'prosecuting' an action on behalf of the government, but is simply defending against Setton's cross-complaint. This is undoubtedly true, but the [c]ourt sees no reason why that posture should diminish the attorney's responsibility to represent the government in a fair and unbiased manner. Certainly District has a duty to be fair and unbiased in administrating the law. There is no reason why District's legal counsel should be exempt from representing District in the same manner.

"Unlike the situations in *County of Santa Clara* and *Clancy*, there is no way for SMW to set aside or waive its conflict of interest, nor to obtain a waiver that would diminish or eliminate its inherent conflict. SMW is duty bound to advance and protect the interests of TBVC. District is duty bound to administrate the law in a fair and unbiased manner in resolving the dispute between Setton and TBVC. There is no way to eliminate the conflict.

"This case differs in a material and important way from the facts in *County of Santa Clara*. . . . [¶] . . . [¶] This is not an 'ordinary civil case' in which District is only seeking to protect its interests like an 'ordinary party.' Here the issue is how District is enforcing the law regarding the dispute between TBVC and Setton. It is, in essence, carrying out an adjudicative function to protect the rights of both the residents and the company. It has to be actually and perceived as being neutral and unbiased in carrying out its duty.

8.

"Assuming that District is correct in arguing that the appearance of impro,priety standard should not be applied here, the point is moot. This is not a situation of a mere appearance of impropriety [footnote omitted], it is a case of an actual conflict where SMW cannot be fair and impartial in representing District. District incorrectly argues that SMW has no duty of neutrality. The *Clancy* and *Santa Clara* cases make it abundantly clear that an attorney representing the government does indeed have such a duty.

"Unquestionably SMW are highly qualified, exceptional attorneys with extensive experience in representing public agencies. It is apparent why District would want to hire them. This, however, is irrelevant. SMW has an undeniable conflict of interest that would prevent it from representing District in a fair and unbiased manner.

"Setton argues that SMW's longstanding financial support of its co-counsel CRLA constitutes a conflict of interest. In light of SMW's representation of the actual party who has a stake in the outcome, TBVC, the [c]ourt finds it unnecessary to decide this issue.

"This [c]ourt is loath to remove an attorney from a case except in extraordinary circumstances, and in fact has never before done so. It should only be done when allowing the attorney to continue on the case would significantly impair the administration of justice. Such cases are infrequent and rare. Because of SMW's very real and irremediable conflict of interest, this is one of those rare cases."

On August 8, 2024, SMW filed, on behalf of District, a notice of appeal from the June 14, 2024 ruling.

## DISCUSSION

### I.  Ruling on a Disqualification Motion - Standard of Review.

District argues de novo review should be used, while Setton contends we should review the trial court's ruling for the abuse of discretion.

A trial court's ruling on a disqualification motion is generally reviewed for abuse of discretion. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) When a party challenges the court's resolution of "disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact." (*In re*

9.

*Charlisse C.* (2008) 45 Cal.4th 145, 159.)  However, a reviewing court conducts an independent review with respect to conclusions of law.  (*Ibid.*)  Therefore, "the trial court's discretion is limited by the applicable legal principles."  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144.)  Moreover, the court's "application of the law to the facts is reversible only if arbitrary and capricious."  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 712.)  For instance, a trial court commits legal error and abuses its discretion when it applies the wrong rule of law to the facts of the case.  (See, e.g., *Rosenfeld Construction Co. v. Superior Court* (1991) 235 Cal.App.3d 566, 576–577 [the order denying motion for disqualification vacated because the trial court applied the wrong legal standard to determine whether a substantial relationship existed between the prior representation and the current representation].)

Here, the trial court grounded its ruling in part on a legal conclusion—based on *Clancy*, that SMW owed a heightened duty of neutrality because it was representing a government entity in a public nuisance action.  The court found *Clancy* applied even though SMW was hired to defend District's cross-complaint because a government attorney has a responsibility to represent the government in a fair and unbiased manner.  The court also concluded that this is not an " 'ordinary civil case' " like *Santa Clara* because District is carrying out an interest on behalf of the public, not merely protecting its interests like an ordinary party.

The trial court also made factual findings.  The court concluded the case involved how District enforced the law regarding the dispute between TBVC and Setton.  SMW had an actual conflict of interest that could not be set aside or waived because, given the facts of the case, SMW had a duty to advance and protect the interests of TBVC.

We thus review the trial court's exercise of discretion as a question of law considering the applicable legal principles with deference to the court's resolution of the facts.  (See *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144.)

10.

## II.     Disqualification Principles.

A court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5); see *Clancy*, *supra*, 39 Cal.3d at p. 745.) A motion to disqualify involves a discord between a client's right to choose its own counsel and the need to maintain ethical standards of professional responsibility. (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 915.) "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.) A disqualification motion implicates a client's right to chosen counsel, however, it also must yield to considerations of ethics and professional responsibility that affect our judicial process. (*Ibid*.)

## III.     A Heightened Duty of Neutrality Applies.

District argues a heightened duty of neutrality only applies to government attorneys prosecuting claims on behalf of the public and does not apply to SMW who was retained to represent District only to defend Setton's cross-complaint.[9] District maintains the trial court used the wrong law; the court's order reflects an unprecedented and unwarranted expansion of *Clancy* and *Santa Clara*.

Setton responds the court did not abuse its discretion when it disqualified SMW.

---

[9] Amici curiae California State Association of Counties and South Coast Air Quality Management District filed a brief in support of District. Amici curiae agrees with District, arguing the holdings of *Clancy*, as narrowed by *Santa Clara*, have never been expanded beyond contingency fee arrangements involving outside counsel assisting in the prosecution of the case.

### A. *Clancy* and *Santa Clara* Cases.

With these principles in mind, we turn our attention to the *Clancy* and *Santa Clara* cases, the heightened requirement of neutrality imposed on government attorneys in certain cases, and the extent these duties apply to the case before us.

*Clancy* involved the City of Corona's efforts to shut down an adult bookstore. There, the city hired an attorney on a contingency fee basis to represent it in a public nuisance abatement action against the adult bookstore after a federal court determined that the city's previous ordinances attempting to regulate the adult bookstore were unconstitutional. (*Clancy*, *supra*, 39 Cal.3d at p. 743.)

Our Supreme Court focused on three primary considerations. First, it examined the duty of neutrality imposed on government attorneys performing governmental functions in criminal prosecutions and its extension to civil cases. (*Clancy*, *supra*, 39 Cal.3d at pp. 745–748.) The court also noted "the rigorous ethical duties imposed on a criminal prosecutor also apply to government lawyers generally." (*Id*. at p. 748.) However, the court rejected an overbroad reading of its holding and noted that under appropriate circumstances, the government may engage private counsel on a contingent fee to try a civil case. (*Ibid*.) Next, the court examined the need to balance the interests of the public and the landowner. (*Id*. at pp. 748–749.) In public nuisance actions, a "delicate weighing of values" lies between "the interest of the people in ridding their city of an obnoxious or dangerous condition" and "the interest of the landowner in using his property as he wishes." (*Id*. at p. 749.) The court also added that when First Amendment interests are implicated, there is an even greater weight for an absolute neutrality requirement that would preclude contingency fee agreements. (*Clancy*, at p. 749.) Last, the court considered the potential for criminal prosecution and liability triggered by a civil suit, noting "[p]ublic nuisance abatement actions share the public interest aspect of eminent domain and criminal cases, and often coincide with criminal prosecutions." (*Ibid*.) "A suit to abate a public nuisance can trigger a criminal prosecution of the owner

12.

of the property. This connection between the civil and criminal aspects of public nuisance law further supports the need for a neutral prosecuting attorney." (*Ibid.*, fn. omitted.) Based on these considerations, and "[i]n the interests of justice," *Clancy* barred a public entity from entering into contingency fee agreements with private counsel in public nuisance actions. (*Id.* at p. 750.)

Our Supreme Court thereafter reconsidered *Clancy* in *Santa Clara*. There, a group of public entities composed of several California counties and cities prosecuted a public nuisance action using contingency fee agreements against lead paint manufacturers. (*Santa Clara*, *supra*, 50 Cal.4th at pp. 45–46.) It affirmed that attorneys prosecuting public nuisance actions on behalf of the government are subject to a heightened standard of ethical conduct. (*Santa Clara*, *supra*, 50 Cal.4th at p. 57.) It narrowed *Clancy*, however, to permit contingency fee agreements in certain public nuisance actions. (*Ibid.*)

As a threshold matter our Supreme Court observed, "our decision to disqualify Clancy from representing [the City of] Corona in the public-nuisance action was founded not upon any specific statutory provision or rule governing the conduct of attorneys, but rather upon the courts' general authority 'to disqualify counsel when necessary in the furtherance of justice.' [Citation.] Invoking that authority, this court stated that it 'may order that Clancy be dismissed from the case if we find the contingent fee arrangement prejudices the [petitioners]." (*Santa Clara*, *supra*, 50 Cal.4th at p. 48.) The court concluded that "the neutrality rules applicable to criminal prosecutors were equally applicable to government attorneys prosecuting certain civil cases," and "noting that a prosecutor does not represent merely an ordinary party to a controversy, but instead is the representative of a ' " 'sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " ' " (*Ibid.*)

The *Santa Clara* court explained *Clancy* "was guided, in large part, by the circumstance that the public-nuisance action pursued by [the city] implicated interests

13.

akin to those inherent in a criminal prosecution." (*Santa Clara*, *supra*, 50 Cal.4th at p. 51.)  Due to this similarity between a public nuisance action and a criminal prosecution, the court found it proper to invoke the disqualification rules applicable to criminal prosecutors, which bar contingent fee agreements in all instances.  (*Ibid.*)

Our high court distinguished the facts in *Clancy* noting that "both the types of remedies sought and the types of interests implicated differ significantly from those involved in *Clancy* and, accordingly, invocation of the strict rules requiring the automatic disqualification of criminal prosecutors is unwarranted." (*Santa Clara*, *supra*, 50 Cal.4th at p. 52.)  The public nuisance action related to prosecuting lead paint manufacturers are not substantially similar to the fundamental rights at stake in a criminal prosecution.  (*Id.* at p. 54.)  "[N]eutrality is a critical concern in criminal prosecutions because of the important constitutional liberty interests at stake.  On the other hand, in ordinary civil cases, we do not require neutrality when the government acts as an ordinary party to a controversy, simply enforcing its own contract and property rights against individuals and entities that allegedly have infringed upon those interests." (*Ibid.*)  The court found that the production and distribution of lead paint had been illegal for over 30 years, thus, depending on the outcome, no ongoing business activity, First Amendment rights, or liberty interests would be implicated.  (*Santa Clara*, at p. 55.)  There was no threat of criminal liability on the manufacturers because the statute of limitations on any criminal prosecution had run.  (*Ibid.*)  Furthermore, spending resources "to abate a hazardous substance affecting the environment is the type of remedy one might find in an ordinary civil case and does not threaten the continued operation of an existing business." (*Id.* at p. 56.)  Unlike *Clancy*, our Supreme Court concluded "this case is closer on the spectrum to an ordinary civil case than it is to a criminal prosecution" where "neither a liberty interest nor the right of an existing business to continued operation is threatened by the present prosecution." (*Ibid.*)

Because the contingency fee agreements were permitted in *Santa Clara*, the Supreme Court set forth "minimum requirements for a retention agreement between a public entity and private counsel adequate to ensure that critical governmental authority is not improperly delegated to an attorney possessing a personal pecuniary interest in the case." (*Santa Clara*, *supra*, 50 Cal.4th at p. 64.) Fee agreements must state that the neutral government attorneys retain complete control and supervision over the overall litigation and make all "discretionary decisions" (*id.* at p. 61) to "safeguard against the possibility that private attorneys unilaterally will engage in inappropriate prosecutorial strategy and tactics geared to maximize their monetary reward" (*id.* at p. 62). (See *id.* at p. 64.) Government attorneys must also "retain a veto power over any decisions made by outside counsel" and "a government attorney with supervisory authority must be personally involved in overseeing the litigation." (*Ibid.*)

## B. This Is Not an Ordinary Civil Case.

Neutrality is not required when "the government acts as an ordinary party to a controversy, simply enforcing its own contract and property rights against individuals and entities that allegedly have infringed upon those interests." (*Santa Clara*, *supra*, 50 Cal.4th at p. 54.) In such cases, "the governmental entity's interests in the litigation are those of an ordinary party, rather than those of the public." (*Id.* at p. 55.)

District's enforcement action, like the one brought in *Clancy*, was brought in the name of the People alleging Setton's actions were "inimical to the rights and interest of the [P]eople of the County of Tulare." District alleged Setton violated District regulations by using the Storage Pond in a manner that constitutes a public nuisance and failed to obtain the Authority to Construct permits before commencing certain pistachio processing activities. It sought civil penalties in specified dollar amounts.

We acknowledge the constitutional rights implicated here are arguably less extreme than in *Clancy*, which affected not only free speech but also the threat of shutting down a small business. (*Clancy*, *supra*, 39 Cal.3d at pp. 743–744.) First Amendment

15.

rights are not at issue here.  The threat in this case is largely to potential business operations due to District's failure to issue permits for Setton's expansion project based on Setton's alleged regulatory violations, although some current operations may be implicated.  Nevertheless, this is not a case where District is merely enforcing its own property rights against Setton who allegedly infringed upon its interests.  (*Santa Clara*, *supra*, 50 Cal.4th at p. 54.)  The rights involved here, on a balance, are closer on the spectrum to the rights involved in *Clancy* where government attorneys must remain absolutely neutral.

District's reliance on *Orange County Water Dist. v. The Arnold Engineering Co*. (2011) 196 Cal.App.4th 1110 (*Orange County*) to support its argument that this is an ordinary civil case is unpersuasive.  In *Orange County*, the Fourth District held that the limitations imposed by *Clancy* and *Santa Clara* do not apply because the law firm was not prosecuting a public nuisance abatement action on the public's behalf but rather brought the action "in its own name to recover compensatory damages it suffered from the groundwater contamination [the] defendants allegedly caused."  (*Orange County*, at p. 1124.)  The action specifically stated it was to "to recover remediation costs" that were " 'separate and distinct from that of the public.' "  (*Ibid*.)  It did not attempt to enforce any rights the water district's users may have had in the groundwater or to recover damages for the public caused from contamination.  (*Id*. at p. 1125.)

Here, District brought the enforcement action against Setton on behalf of the public, not merely to enforce the rights of District itself but to enforce District rules in order to maintain air quality standards for the people in the community.  In contrast, the plaintiffs in *Orange County* only sought to recover damages for the water district. (*Orange County*, *supra*, 196 Cal.App.4th at p. 1124.)  District attempts to use *Orange County* to argue that providing a defense against Setton's cross-claims is similar to the

water district bringing the action in their own name.[10] We disagree. While we acknowledge that District only seeks compensatory damages for the enforcement action, the civil penalties sought by District are under the guise of abating the alleged public nuisance Setton created on behalf of the public.

### C. Defending a Cross-complaint.

District argues that SMW cannot press charges and therefore cannot abuse its prosecutorial power by engaging in inappropriate prosecutorial strategy and tactics geared to maximize SMW's interests.

There is no published case that addresses a government attorney's heightened duty of neutrality when it is only providing defense representation in the same action the government agency is prosecuting. There is similarly no rule in the California Rules of Professional Conduct which governs the issue before us.

As previously stated, our Supreme Court held in *Clancy* that a government attorney's neutrality is "essential to a fair outcome for the litigants in the case in which he is involved . . . [and] it is essential to the proper function of the judicial process as a whole. Our system relies for its validity on the confidence of society; without a belief by the people that the system is just and impartial, the concept of the rule of law cannot survive." (*Clancy*, *supra*, 39 Cal.3d at p. 746.) We do not see that neutrality requirement to be limited to government attorneys who prosecute complaints, as opposed to those who defend against complaints.

### D. The Cross-complaint's Relationship to the Complaint.

District further argues that a cross-complaint gives rise to an action independent of that initiated by the complaint, citing *Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109 (*Westamerica Bank*). *Westamerica Bank* grappled with the issue of

---

[10] Specifically, District argues a heightened duty of neutrality does not apply to the prosecution of its enforcement action against Setton and therefore, a heightened duty of neutrality equally does not apply to SMW providing defense representation.

whether the respondents' offer to settle only an amended complaint and not a pending cross-complaint was valid to trigger the provisions of respondents' Code of Civil Procedure section 998 offer upon resolution of the amended complaint. (*Westamerica Bank*, *supra*, at p. 125.) This court concluded that "based on the language of [Code of Civil Procedure] section 998 and the settled definitions of the key words in that statute, [the] respondents' offer to settle only the amended complaint was valid to trigger the provisions of [Code of Civil Procedure] section 998 because acceptance of that offer by the 'other party to the action' would have allowed 'judgment to be taken.' " (*Id*. at p. 135.) In so holding, we reasoned, "[a] cross-complaint is generally considered to be a separate action from that initiated by the complaint." (*Id*. at p. 134.)

While *Westamerica Bank* found that a complaint and a cross-complaint are, in terms of settlement, treated as independent actions, this court was not addressing the issue in the context of a motion to disqualify. (*Westamerica Bank*, *supra*, 158 Cal.App.4th at pp. 134–135.) Here, we are concerned with the rights implicated by the original enforcement action and the cross-complaint, which originate from the same set of facts,[11] rather than the consideration of separate settlement offers. The record shows District concedes this point.[12]

A trial court's inherent authority to disqualify a government attorney "in furtherance of justice" is different than *Westamerica Bank*'s distinction of claims and

[11] For example, the cross-complaint alleged District's investigation and enforcement activities with respect to the Storage Pond and the odors emanating therefrom denied Setton substantial property interests and due process of the law.

[12] In District's motion to strike, District argued the claims in Setton's cross-complaint was "unnecessary" because the claims "indisputably arise out of" and are "explicitly based on" District's enforcement activities, and thus Setton could simply "assert any legal defects it sees in the District's claims as affirmative defenses in its answer." At the hearing on Setton's motion to disqualify, when the court asked District's counsel whether the complaint and cross-complaint arose from the same set of facts counsel responded, "Well, yes and no. . . ."

cross-claims in the context of settlement based on the statutory interpretation of Code of Civil Procedure section 998 offers. (*Westamerica Bank*, *supra*, 158 Cal.App.4th at p. 135; see, e.g., *In re Charlisse C.*, *supra*, 45 Cal.4th at p. 159 [" '[a] trial court's authority to disqualify an attorney derives from the power inherent in every court "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto" ' "].)

### E. The Effect of the Retainer Agreement.

District next argues that supervision by neutral, in-house attorneys insulates the proceedings against any conflict outside private counsel may have. District argues the trial court ignored this holding in *Santa Clara*.[13]

Setton argues this case involves important constitutional interests and mere oversight by neutral in-house attorneys for District cannot insulate the proceedings. Notwithstanding, Setton maintains that even if *Santa Clara* was applicable, the retainer agreement between District and SMW did not include the minimum requirements to preserve SMW's duty of neutrality.

SMW's retainer with District stated it was only representing District with respect to Setton's cross-claims. It also disclosed SMW's concurrent representation of TBVC in connection with the CEQA action. The agreement further stated:

> "We do not believe that there is any present, actual conflict of interest between our present representation of [District] in this matter and our work for TBVC. To the best of our knowledge, [District] and TBVC are not adverse to each other on any matters that [SMW] is working on. Moreover, we do not expect to receive any confidential communications with [District] in the matter that would be relevant to our work on the CEQA litigation for TBVC. Nevertheless, in an abundance of caution,

---

[13] Amici curiae argues District counsel retains neutral control over decisions on discovery, settlement, and defense litigation strategy, which mitigate the concerns raised by Setton. We note amici curiae only uses attorney argument to support this point.

19.

[SMW] will implement a policy to (1) ensure that [SMW] attorneys working for TBVC do not perform work for [District] and vice versa; and (2) screen [SMW] attorneys working for TBVC from accessing documents generated in our work for [District].

"Notwithstanding the foregoing, our concurrent representation of [District] in this matter and TBVC in the CEQA litigation could put [SMW] in a position of representing two clients whose interests could potentially become adverse. While not expected, the potential for such a situation gives rise to the possibility of divided loyalty on the part of [SMW].

"Although we are not currently aware of any actual or reasonably foreseeable adverse effects of such potential divided loyalty in this case, it is possible that such effects may arise. Accordingly, we are seeking [District's] informed written consent to concurrent representation from both [District] and TBVC. We are seeking a reciprocal consent from TBVC.

". . . By signing and returning this Agreement, [District] consents to [SMW's] continued representation of TBVC in the CEQA litigation. [District] further waives and agrees not to assert any such conflict of interest or seek to disqualify [SMW] from representing TBVC in the CEQA litigation, notwithstanding any adversity that may develop in the future."

SMW's hourly fees for services were also set forth; there was no contingency fee agreement.

*Santa Clara* set forth minimum requirements a retainer agreement between "public entities and private counsel *must* provide" to preserve the duty of neutrality: "(1) that the public-entity attorneys will retain complete control over the course and conduct of the case; (2) that government attorneys retain a veto power over any decisions made by outside counsel; and (3) that a government attorney with supervisory authority must be personally involved in overseeing the litigation."[14] (*Santa Clara*, *supra*, 50 Cal.4th at

---

[14] The court further noted: "These specific provisions are not exhaustive. The unique circumstances of each prosecution may require a different set of guidelines for effective supervision and control of the case, and public entities may find it useful to specify other discretionary decisions that will remain vested in government attorneys. Nevertheless, the aforementioned provisions comprise the minimum requirements for a retention agreement between a public entity and private counsel adequate to ensure that

p. 64, italics added.) The retainer agreement in this case does not meet those minimum requirements. District does not cite to anything other than the retainer agreement and a single appearance by District's in-house counsel at a case management conference to support its argument that the neutral in-house attorneys for District maintained control of the litigation. Thus, even if we concluded this was an "ordinary civil case," the retainer agreement between District and SMW was inadequate to preserve the duty of neutrality.

### F. The Lack of a Contingency Fee Agreement.

District contends SMW had no conflict inconsistent with the duty of neutrality because District and SMW did not use a contingency fee agreement. It argues that the trial court's order radically expanded the holding in *Clancy* and *Santa Clara* because SMW had no pecuniary interest in the outcome of the litigation. (*Clancy*, *supra*, 39 Cal.3d at p. 750 [the "contingent fee arrangement" was "antithetical to the standard of neutrality that an attorney representing the government must meet when prosecuting a public nuisance abatement action"].)

Setton maintains *Clancy* applies, and no procedural safeguards could have remedied SMW's "personal and institutional interests" despite the lack of contingency agreement. Setton argues that *Clancy* and *Santa Clara* are still applicable in this case despite SMW's lack of pecuniary interest in the litigation.

There is no published case applying *Clancy* or *Santa Clara* outside of the context of contingency fee agreements. However, the court in *Santa Clara* stated: "We observe as a threshold matter that our decision to disqualify [the attorney] from representing [the city] in the public-nuisance action was founded not upon any specific statutory provision or rule governing the conduct of attorneys, but rather upon the courts' general authority 'to disqualify counsel when necessary in the furtherance of justice.' [Citation.] Invoking

---

critical governmental authority is not improperly delegated to an attorney possessing a personal pecuniary interest in the case." (*Santa Clara*, *supra*, 50 Cal.4th at p. 64.)

that authority, [the Supreme Court] stated that it 'may order that [the attorney] be dismissed from the case if we find the contingent fee arrangement prejudices the [defendants].' " (*Santa Clara*, *supra*, 50 Cal.4th at p. 48.) Although both *Clancy* and *Santa Clara* evaluated the propriety of a contingency fee agreement between a public entity and a private attorney, we do not believe the application outside of the contingency fee context was unforeseen considering our high court's consideration of prejudice to the defendant and the ultimate holding that disqualification was "[i]n the interests of justice." (*Clancy*, *supra*, 39 Cal.3d at p. 750.) We also point out that other courts contemplated the application of *Clancy* outside of the contingency fee context in certain circumstances. For example, in *Priceline.com Inc. v. City of Anaheim* (2010) 180 Cal.App.4th 1130, the Fourth District reasoned: "*Clancy* identifies the contingency fee lawyers' financial interest in the outcome of a case as a factor that may interfere with the duty of neutrality. But it is just as easily argued that a contingency fee lawyer is *less* likely to pursue meritless litigation, whereas an hourly fee lawyer may have a financial motivation to continue prosecuting litigation discovered to lack merit . . . we question the unstated assumption upon which *Clancy* is based." (*Id.* at p. 1149.)

In *Clancy*, our Supreme Court was concerned with whether the retained attorney had an interest in the result of the case and the contingency fee arrangement evidenced that. We conclude an interest in the result of the case can be generated from facts, like those here, other than a contingency fee arrangement. SMW's representation of TBVC in the CEQA action against Setton, and its representation in the Water Board action against Setton, are interests extraneous to its official duty to represent District on the cross-complaint. (*Clancy*, *supra*, 39 Cal.3d at p. 746; see *Santa Clara*, *supra*, 50 Cal.4th at p. 49 [a lawyer who is a public officer " ' "should not engage in activities in which his personal or professional interests are or foreseeably may be in conflict with his official duties" ' "].) Like responsibilities associated with the prosecution of a criminal case, SMW does not represent merely an ordinary party to a controversy, it is the representative

of "a ' " 'sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, . . . is not that it shall win a case, but that justice shall be done.' " ' " (*Santa Clara*, at p. 48.) SMW is not impartial.

### G. Waivers and Consents.

District next argues that the parties waived any conflict of interest. In support of District's opposition to Setton's motion to disqualify, an attorney representing SMW declared that SMW "obtained consents to concurrent representation from both TBVC and the District." The attorney also stated in his declaration that "SMW's representation of TBVC and the District on separate matters does not create a conflict of interest. Nevertheless . . . SMW has implemented procedures to ensure (1) that all attorneys working on this matter for the District do not have access to any material related to the TBVC matter, and vice-versa, and (2) that attorneys working on the respective matters do not communicate with each other regarding either matter."

California Rules of Professional Conduct, rule 1.7(b) provides that "[a] lawyer shall not, without informed written consent . . . from each affected client . . . represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client . . . or by the lawyer's own interests."

The retainer agreement between District and SMW did not waive conflicts on behalf of TBVC. Additionally, the actual consents from TBVC and District to concurrent representation were not provided as part of this appeal. We acknowledge the attorney's declaration stated SMW obtained consents from both TBVC and District. The declaration also discussed the procedures SMW implemented to ensure neutrality. We are not persuaded that the attorney's declaration provided a sufficient waiver of any conflict of interest. More importantly, however, the trial court's ruling focused, not on the details of the retainer agreement and waiver, but rather on the fact that these loyalties

23.

*could not* be waived due to a government attorney's heightened duty of neutrality.[15]  We agree.

Attorneys owe a duty of undivided loyalty to their clients to ensure public confidence in the legal profession and judicial process.  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146.)  When attorneys represent two clients concurrently, the primary value at stake is the attorney's duty of loyalty.  (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284; *ibid*. [a more stringent test is used in dual representation cases than in successive representations; "[e]ven though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*"]; *Kelly v. Greason* (1968) 23 N.Y.2d 368, 376 ["[W]ith rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship."].)  The right to counsel of one's choice must be balanced with "the paramount objective of maintaining public confidence in the impartiality of the courts and the integrity of its professional bar, the former must yield ' "to considerations of ethics which run to the very integrity of our judicial process." ' "  (*Yorn v. Superior Court* (1979) 90 Cal.App.3d 669, 677.)

SMW's interest and TBVC's stake in the outcome of this related litigation is compelling enough to preclude it from representing District, who, as a government attorney, must act in an " 'even-handed manner' " and is obligated to seek justice impartially.  (*People v. Lepe* (1985) 164 Cal.App.3d 685, 688.)  We reach this conclusion even if valid consents from both TBVC and District were before us and considering the attorney's declaration which stated all conflicts between the parties had been waived.

---

[15] At the motion to disqualify hearing, counsel for District suggested revising the retainer agreement.  However, the court found this unnecessary due to SMW's heightened duty of neutrality and conflict of interest in representing both TBVC and District.

24.

We conclude that a heightened duty of neutrality applies here. The trial court correctly used its inherent authority "to disqualify counsel when necessary in the furtherance of justice." (*Clancy*, *supra*, 39 Cal.3d at p. 745.)

## H. Remaining Issues Raised by District.

### 1. The Trial Court's Reference to District as a "[R]eferee."

District claims the trial court erroneously called District a " 'referee' " and applied the "appearance of impropriety standard" of conduct applicable only to judges. We first note the court did not rely on an appearance of impropriety standard when it concluded District was required to uphold a duty of neutrality. The court first stated in a footnote, "[t]hough it cannot be seriously argued that there is no appearance of impropriety in SMW representing . . . one of the parties to the dispute and the agency tasked with resolving the dispute." However, the court thereafter concluded, "[t]his is *not* a situation of a mere appearance of impropriety, it is a case of an actual conflict where SMW cannot be fair and impartial in representing District." (Fn. omitted, italics added.) Thus, to the extent District is arguing the court relied on the wrong legal standard applicable to judges, this is not the case.[16] (Cf. *Oaks Management Corporation v. Superior Court* (2006) 145 Cal.App.4th 453, 471 [the appearance of impropriety is not a sufficient ground for disqualification of an attorney].)

We also disagree that the trial court used the wrong legal standard when it referred to District as a "referee" in this case.[17] The court described District's role in the litigation as a "referee" when it stated as follows:

---

[16] The trial court's statement in the footnote is the only reference to the "appearance" of impropriety, and the court immediately thereafter said that this is not a situation where there is a mere appearance of impropriety. Thus, we cannot conclude the trial court relied on the wrong standard.

[17] As District points out, the court order does not cite any authority for these references. When reading the order as a whole, we believe the court merely used the

"Setton cannot be expected to feel like it is being treated fairly when both the District and TBVC line up against it, nor can the public be expected to view that arrangement as a reasonable alignment. If the referee of a game comes in wearing the jersey of one of the teams playing, the spectators are not going to perceive the referee as being fair and impartial. District's argument that this cross-complaint against it is totally separate and distinct from District's original complaint against Setton ignores the reality that the only reason Setton brought the cross-complaint results from the same set of facts that resulted in the original complaint and TBVC's initial action against Setton. Allowing SMW to represent District would undermine public confidence in the integrity of the judicial system."

The trial court's reference to District as a "referee" was merely to explain the court's ultimate conclusion that SMW's representation of both TBVC and District in similar actions against Setton creates an actual conflict of interest, and does not comport with the duty of neutrality imposed on attorneys representing the government in a public nuisance action. An improper legal standard was not used.

Insofar as District argues that substantial evidence does not support the characterization of District's role in the litigation, District is mistaken.[18] The trial court soundly found the issue here involves how District is enforcing the law regarding the dispute between TBVC and Setton.[19] TBVC, represented by SMW, has a stake in the outcome of the enforcement action. And, Setton's cross-complaint is not totally separate and distinct from the enforcement action District is prosecuting against Setton, but results from the same set of facts. Substantial evidence supports the trial court's description of the relationship between the parties and District's position in the proceedings.

---

"referee" reference to describe the relationship between the parties, not an improper legal standard.

[18] We point out District does not expressly make any evidence claims. District only argues that the trial court mistakenly described the litigation as a dispute between Setton and TBVC. District also maintains the court inappropriately stated it was a "referee" or adjudicator.

[19] SMW is concurrently representing TBVC in the CEQA action, challenging the County of Tulare's misuse of CEQA and Setton's expansion project.

## 2. Abridgement of Retention of Outside Counsel.

Finally, District argues that if the trial court's order is upheld, the reliance on local government's outside counsel will be threatened.[20]  Setton contends the court weighed the relative hardships against the prejudice SMW's representation may cause and properly concluded that SMW should be disqualified.  We agree.

In support of their argument, District states that approximately " '384 cities in the [S]tate of California employ outside counsel to perform special prosecution and/or city attorney services.' "  (*City of Norco v. Mugar* (2020) 59 Cal.App.5th 786, 791, fn. 3.)  We are not sure how this statement helps District's claim.  In *City of Norco v. Mugar*, the city requested judicial notice of the fact that " '384 cities' " in the state use outside counsel to assist the government in prosecuting claims, and since the request went unopposed, the Fourth District granted it.  (*Ibid*.)  But this fact was not used by the court in *City of Norco v. Mugar* to support its decision to uphold the city's use of outside counsel.  (*Id*. at pp. 794–796.)

Another law firm was proposed to District to represent it in defending Setton's cross-complaint offsetting at least some of District's alleged hardship.

## I.     Conclusion.

We extend the heightened duty of neutrality to SMW, hired by District, because: (1) District is prosecuting a public nuisance enforcement action against Setton, arising out of the same set of facts as Setton's cross-claim; (2) this is not an "ordinary civil case" but rather District's enforcement action seeks to protect the rights and air quality of the public; and (3) because SMW also concurrently represents TBVC in related actions against Setton, and thus TBVC, represented by SMW, has an interest in the outcome of

---

[20] Amici curiae argues that public agencies should have the same ability to choose how to defend litigation and allocate resources that private litigants possess, and expanding *Clancy* and *Santa Clara* will only serve to disadvantage public agencies generally.

the instant action.  Nothing in this opinion shall be construed to extend a heightened duty of neutrality to all counsel representing public agencies on a noncontingency fee basis.

## **DISPOSITION**

The trial court's June 14, 2024 order granting Setton's motion to disqualify SMW from representing District is affirmed.  The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                                                    DETJEN, J.

WE CONCUR:


LEVY, Acting P. J.


DE SANTOS, J.